FARNHAM REALTY CORPORATION, Appellant, *v.* WILLIAM M. POSNER, Respondent.

First Department, April 21, 1922.

**Landlord and tenant — Rent Laws of 1920 — tenant of apartment house in New York city who took possession after October 1, 1920, not within purview of Rent Laws of 1920 — statute limited to emergency arising from fact that those in possession were required to pay exorbitant rents or vacate — those in possession of dwelling place in New York city prior to September Housing Laws of 1920 preferred class — constitutional law — public control of private property limited to necessity of occasion — exercise of police power function of Legislature, but whether subject-matter is within police power is judicial question.**

A tenant of an apartment in New York city, who entered into possession about October 15, 1920, under a lease dated October 6, 1920, for a term commencing October 15, 1920, is not within the purview of chapters 136 and 944 of the Laws of 1920, known as the Emergency Rent Laws, as that legislation was limited to the immediate emergency which arose from the fact that, by reason of the inadequacy of the housing facilities, those in possession were required to pay exorbitant rents under threat of dispossession.

The intent of the Legislature was to make a preferred class of those tenants who were in possession of dwellings, apartments or tenement houses in New York city prior to September 27, 1920, when the September Housing Laws of 1920 took effect, and to permit them to remain in possession until November 1, 1922, so long as they paid a reasonable rent to be ascertained as prescribed in the statute.

In time of calamity or overruling necessity, temporary interference or an actual appropriation of private property may be necessary and justified by the emergency. Such interference, however, must be limited to that which is necessary to the occasion.

When a subject-matter is within the police power of the State, its regulation is within the power of the Legislature; but whether the subject-matter is within the police power is a judicial question to be determined by the courts.

APPEAL by the plaintiff, Farnham Realty Corporation, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 2d day of November, 1921, denying plaintiff's motion to strike out denials in the answer and for judgment on the pleadings, and for a summary judgment pursuant to rules 103, 112 and 113 of the Rules of Civil Practice.

*M. S. & I. S. Isaacs* [*Lewis M. Isaacs* of counsel], for the appellant.

*Frank, Weil & Strouse* [*Alexander L. Strouse* of counsel], for the respondent.

PAGE, J.:

The action is to recover rent for the month of July, 1921, under a written lease of an apartment in premises in the borough of Manhattan, dated on October 6, 1920, for a term of one year and

eleven and one-half months, commencing on October 15, 1920. The defendant entered into possession on or about said last mentioned date, and has ever since continued in possession thereof, and has paid the rent called for by the terms of the lease up to and including the rent payable by the terms thereof for the month of June, 1921. A copy of the lease is annexed to the complaint, and by stipulation of the parties the denials of the complaint were withdrawn, and the fact is admitted that the defendant made the deposit required by chapter 944 of the Laws of 1920. The court took under consideration the motions for judgment on the pleadings under rule 112 of the Rules of Civil Practice, and for summary judgment under rule 113 of said Rules. The separate defense alleges:

" *Sixth.* That the rent sought to be recovered in this action and referred to in paragraphs ' Second,' ' Fourth ' and ' Fifth ' of the amended complaint herein is unjust and unreasonable, and that the agreement alleged in said paragraphs of the amended complaint, under which said rent is sought to be recovered, is oppressive."

The purpose of this defense is to allow the defendant to take advantage of the provisions of chapters 136 and 944 of the Laws of 1920. If, as a matter of law, those statutes apply to this case, then the defense presents a triable issue; therefore, summary judgment should not be given under rule 113, but the question is properly presented by the motion for judgment on the pleadings.

In *People ex rel. Durham Realty Corporation* v. *LaFetra* (230 N. Y. 429) the opinion states: " The official explanation of the law appended to and submitted with the bill [Laws of 1920, chap. 942] states its purpose and effect to be ' to do away with the anxiety of the many people in New York who have been served with notices to move on October 1.' This declared purpose draws with it the consideration of a group of statutes enacted at the same session to meet a supposed crisis, which are closely related to each other; are a part of the same plan of *remedial protection to the tenants in possession on October first,* and can be fairly understood only when considered as parts of one comprehensive design." (p. 437.) The court then summarized the condition and events which led to the legislative investigation, and further said: " While the inadequacy of housing facilities in cities had become a matter of world-wide concern, in the closely settled metropolis it was a problem of the utmost gravity, calamitous in its possibilities. The Legislature, unequal to the task of caring for all, *decided to make the tenants in possession a preferred class* by staying until November 1, 1922, all proceedings to dispossess them, except for reasons hereinafter stated, so long as they paid a ' reasonable rent,' which

is the term used for a statutory charge for use and occupation, to be ascertained judicially through a method provided by the statutes. The owners of dwellings, including apartment and tenement houses * * * were, therefore, wholly deprived until November 1, 1922, of all possessory remedies for the purpose of removing from their premises the *tenants or occupants in possession when the laws took effect,* * * * providing *such tenants or occupants* are ready, able and willing to pay a reasonable rent or price for their use and occupation " (pp. 438, 439). " One class of landlords is selected for regulation because one class conspicuously offends; one class of tenants has protection because all who seek homes cannot be provided with places to sleep and eat. *Those who are out of possession, willing to pay exorbitant rentals, or unable to pay any rentals whatever, have been left to shift for themselves.* But such classifications deny to no one the equal protection of the laws. The distinction between the groups is real and rests on a substantial basis " (p. 447). (The italicization in this and the following quotations is mine.) Judge McLAUGHLIN, in his dissenting opinion in *Levy Leasing Co., Inc.,* v. *Siegel* (230 N. Y. 634, 640), which by reference he made the grounds of his dissent in the *Durham Realty* case, stated that he agreed with the majority of the court that the legislative purpose " was to make tenants in possession a preferred class until November 1, 1922." In *Marcus Brown Holding Co.* v. *Feldman* (269 Fed. Rep. 306), HOUGH, Circuit Judge (sitting pursuant to section 266 of the United States Judicial Code [36 U. S. Stat. at Large, 1162, as amd. by 37 id. 1013, chap. 160], with MAYER and A. N. HAND, District Judges), writing for the court in construing these same laws, used similar expressions to those quoted above, limiting the scope and effect of the laws to " the tenants or occupants of September, 1920 " (p. 311); " that the legislative desire is to maintain for about two years *the September status* of the kind of dwellings * * *. This status is to be maintained against the landlord's will if necessary, but at the option of the tenants, for the landlord cannot select his tenants, but must accept what may be called the *statutory tenants,* yet every such tenant is and will be as free to depart and choose another landlord *as he was before September, 1920* " (p. 312). " Again, it is said that these statutes put an end to liberty of contract and take property for a private use, and, therefore, in both respects amount to a denial of due process of law. That *as to one* and a very large fraction of the contractual engagements current in this [New York] city there is no liberty of contract under these statutes cannot be denied, and that property is taken from the landlord for the use of the *statutory tenant* is also true " (p. 313). " Such demand raised the market value of the

old, and correspondingly diminished economic equality, or equality in bargaining, between any actual landlord and any would-be tenant, either · new or old.   Such conditions produced a reason deemed sufficient by the Legislature to *prefer in the struggle for living space the tenants in possession to all others, and to them* was given the option of remaining at a reasonable rent, so called — really a statutory charge for use and occupation " (p. 315).   " If, therefore, the allotment of necessaries in times of stress is a governmental function known to historic law, and the business now affected is (in such circumstances) one capable of being affected with a public interest, nothing remains of plaintiff's contention, except the complaint of inequality in legal protection, *i. e.*, of classification. This is the nub of the matter, for it is plain that a reason must be clear which justifies on fundamental — *i. e.*, constitutional — principles, the selection of one class of landlords for regulation and one class of tenants for favor and protection " (p. 317).

From these extracts from the opinions of the Court of Appeals and the United States District Court for the Southern District of New York, it clearly appears that the intent of the Legislature was judicially declared to be to make a preferred class of those tenants who were in possession of dwellings, apartments or tenement houses when the September Housing Laws of 1920 took effect, namely, on September 27, 1920, and to permit them to remain in possession until November 1, 1922, so long as they paid a reasonable rent to be ascertained in the manner prescribed in the statute.   The only justification for the exercise of the extraordinary power to take control of private property and devote it to a private use, to suspend the ordinary processes of the courts, to impair the obligations of contracts and to interfere with the freedom to contract, was found in the police power of the State in dealing with a public emergency, which the Legislature declared existed.   It should be clearly borne in mind that the emergency was not the advance in rents by reason of the housing shortage as a sequence of the World War, for the prices of food, clothing and the other necessities of life had advanced proportionately with the rentals of real estate.   The emergency arose from the fact that, by reason of the inadequacy of housing facilities, those in possession were required to pay exorbitant rents under threat of dispossession, and that upwards of 100,000 such proceedings had been instituted in the city of New York.   The turning into the streets of 400,000 or 500,000 persons, or the alternative of submission to extortionate demands for rent, created. the emergency.   The demand that the tenant submit to extortion, or have his family put upon the street, was held to have interfered with the freedom to contract, as one of the parties was under duress.

None of these considerations operated in the case of the person out of possession who was seeking a home. As between such a person and the landlord they stood on an equality. If the landlord demanded more than the prospective tenant was willing to pay, he could refuse to make the lease, and both parties were in the same position that they were before. If he signed the lease at the high rental, he voluntarily assumed the burden, and could not claim that duress was exercised when he paid the then market price; for we may assume that, having a freedom of choice, he selected that which was reasonable in comparison with others that were offered. If rentals were so high, by reason of scarcity of housing facilities, as to make an unusually large return on the investment, capital would be attracted, building of dwellings, apartments and tenements would be stimulated, and the level of rents would be lowered to that of the reasonable return on the investment. We cannot assume that it was the intention of the Legislature to brush aside all the constitutional safeguards of private ownership of real estate, and also to abrogate the great economic law of supply and demand. The natural process of this economic principle was left free scope in so far as those who, without restraint, could make their bargains in the open market, which in time would bring rentals to a reasonable figure. This legislation can only be justified on the theory of emergency with reference to those tenants who were in possession at the time the law was enacted.

If a dwelling or an apartment is offered for rental to a private family for residential purposes (and it is only to such that the laws under consideration apply), it is not thereby devoted to the public use or affected with a public use, so as to bring it within the rate-regulating power of the Legislature. Such property is within the protection of the State and Federal Constitutions. It is true that, in times of calamity or overruling necessity, temporary interference with the control, or an actual appropriation, of such property may be necessary and justified by the emergency. Such interference, however, must be limited to that which is necessary to the occasion. When a subject-matter is within the police power of the State, its regulation is within the power of the Legislature; but whether the subject-matter is within the police power is a judicial question to be determined by the courts. (*Matter of Jacobs*, 98 N. Y. 98, 111.) In my opinion this legislation was limited to the immediate emergency, and should not be extended beyond those limits.

In the case under consideration the tenant voluntarily signed the lease and agreed to pay the rent reserved, and paid it without question for eight months. Now, on the theory of duress, he seeks to escape from his contract and have a jury make a contract for

him that will be binding on the landlord. In what did the alleged duress consist? In this, that he could not obtain similar accommodation in the locality that he desired at a less rental, and perforce he must pay the rent the landlord demanded.

If such an argument can be accepted, why should not the man who bought a suit of clothes from his tailor for $150, which he could have obtained in prewar days for $75, be allowed to refuse to pay, on the ground that the price was unreasonable, and ask that a jury determine what the tailor is entitled to receive and at what rate he shall continue to furnish him clothes?

In my opinion the defendant is not within the purview of the statute, and the defense is insufficient in law.

The order will, therefore, be reversed, with ten dollars costs and disbursements, plaintiff's motion for judgment on the pleadings granted, with ten dollars costs.

DOWLING, SMITH and MERRELL, JJ., concur; LAUGHLIN, J., concurs in result.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.