SAMUEL MARION, Landlord, Appellant, *v.* IRVING L. WEISER, Tenant, Respondent.

Supreme Court, Appellate Term. Second Department, October, 1922.

Landlord and tenant — lease of apartment in New York city — when unreasonableness of rent a defense in summary proceedings — amount of rental.

The " Housing Laws," so called, apply to a tenancy created after September, 1920.

The tenant under a lease of an apartment house in the city of New York made in March, 1921, paid the agreed rent for a month. In summary proceedings to dispossess him for non-payment of the rent for the following month, he pleaded as a defense that the rent sought was unreasonable under the statute. *Held,* that the tenant was entitled to avail himself of such defense.

The evidence established that the agreed rent was unreasonable, and at the lesser rate fixed by the trial court, allowing all expenses claimed by the landlord, the net rental from the property amounted to nearly ten per cent of its assessed

valuation.  *Held*, that the landlord had no cause to complain and a final order awarding him possess'on of the premises with rent as fixed by the court below will be affirmed.

APPEAL by landlord from a final order of the Municipal Court, borough of Brooklyn, fourth district, awarding him possession of the premises and fixing the reasonable rental value thereof at sixty-eight dollars and thirty-three cents a month.

*Morris Alfred Vogel* and *Samuel Marion*, for landlord, appellant.

*William Tapley*, for tenant, respondent. ·

CROPSEY, J.   The only question upon this appeal which presents any basis for discussion is whether the Housing Laws, so called, apply to tenants who became such since their enactment.   The tenant made a lease of an apartment in March, 1921.   He paid the agreed rent for a month, and refused to pay for the following month.   The landlord then started a proceeding to dispossess him for non-payment of rent.   The tenant pleaded the defense that the rent sought was unreasonable under the statute.   The evidence established that the agreed rent was unreasonable and the court fixed a lesser amount.   Can the tenant avail himself of the defense provided by the Housing Statutes?

The Appellate Division in the first department has held that the Housing Laws affect only those tenants who were in possession at the time of their enactment, and that a tenant who became such thereafter has no right to avail himself of their provisions. *Farnham Realty Corporation* v. *Posner*, 200 App. Div. 827.   That decision was based upon the language used by the Court of Appeals in upholding the constitutionality of those statutes (*People ex rel. Durham Realty Corp.* v. *LaFetra*, 230 N. Y. 429) and similar language of the Circuit Court of Appeals.   *Marcus Brown Holding Co.* v. *Feldman*, 269 Fed. Rep. 306.   And somewhat similar language is used by the United States Supreme Court in affirming the judgments of the lower court in *Levy Leasing Co.* v. *Siegel*, 258 U. S 242; 66 L. ed. 326, decided March 20, 1922.   In each of those opinions it was stated that the purpose of the statutes was to protect tenants who were in possession at the time of their enactment — that those tenants were constituted a preferred class.   Inferentially the language used means that the statutes had no reference to persons who were not tenants in possession at the time of their enactment. But, of course, the question is one of legislative intent.   In *People ex rel. Durham Realty Corp.* v. *LaFetra, supra,* the Court of Appeals says that it finds support for its construction of the statutes in the report made by the committee which submitted those bills to the legislature.   And it is stated that the official explanation

of the laws shows they were passed merely to protect " tenants in possession on October first," 1920.

The questions presented for decision in the cases referred to, with the exception of *Farnham Realty Corporation* v. *Posner, supra*, however, were as to the constitutionality of those statutes, not as to their construction. Of course their construction might enter into the consideration of their constitutionality. For instance, had the courts held that they would be constitutional if they meant one thing and unconstitutional if they meant another, the courts necessarily would be required to determine which construction was the proper one to be given. But as we read those decisions they do not seem to hold that the statutes would be unconstitutional unless they were construed to mean that they applied only to tenants in possession at the time of their passage. We think their constitutionality would have been upheld even if they had been given a much broader construction. And we find nothing in the decisions which is to the contrary. In fact one of the attacks upon their constitutionality seems to have been based upon the contention that they were what are sometimes called class legislation. See *Marcus Brown Holding Co.* v. *Feldman*, 269 Fed. Rep. 317. In other words, the constitutionality of the laws was proclaimed even if they did create such a preferred class, not because they created it. Therefore, while the language used may be significant, it does not seem to have been necessary for the rendering of the decisions in question, and so may not be held to judicially determine what the true construction of those statutes is.

If we are to consider what the legislature meant, so far as that is revealed by the language of the statutes themselves, and by the explanatory matter accompanying their introduction and by the subsequent enactments, we do not see how we can reach the conclusion that was arrived at in the *Farnham* case. It is true that in one portion of the committee's explanatory matter it is stated that the object of the legislation was to " do away with the anxiety of the many people in New York who are now holding their premises under short stays or have been served with notices to move on October first." See Appendix " B " of " The Tenant and his Landlord " by Lauer & House, 322, 323. And if that was all there was either in the explanatory matter or in the statutes themselves to show the intent of the legislature, the conclusion which has been mentioned might well be justified. But there is much more which affects this question.

The first housing statutes were passed in April, 1920. One was chapter 139 of the laws of that year. This amended section 2231 of the Code of Civil Procedure by adding subdivision 2a.

It provided, in effect, that no summary proceeding based upon the non-payment of rent should be maintained except in certain instances. This act, by its terms, applied to certain existing tenancies, and to " any lease or tenancy commencing after this subdivision takes effect." Chapter 209 of the Laws of 1920 provided that no monthly tenant or tenant from month to month should be removed unless a thirty-day notice had been given. This seems to be part of the general housing legislation, but it could hardly be claimed that it was not to apply to all such tenants thereafter, even though they were not such at the time of the passage of the act.

At an extraordinary session of the legislature, held in September, 1920, additional legislation was enacted on this general subject. That became law September twenty-seventh. Chapter 942, which was part of that legislation, added subdivision 1a to section 2231 of the Code of Civil Procedure. It affected all summary proceedings based on the claim of a holding over and prohibited the institution of such proceedings, except in the cases specified in the act. But this statute expressly provided that it " shall not apply to a new building in course of construction at the time this subdivision takes effect or commenced thereafter." Chapter 944, enacted at the same time, treats of actions for rent and the defenses thereto. Section 10 thereof contains a provision similar to that just quoted from chapter 942. And chapter 945 likewise contains similar provisions. That chapter amended subdivision 2a of section 2231 of the Code of Civil Procedure, which had been added by chapter 139 of the Laws of 1920. The amendment was a material one and this subdivision was very generally changed. The provision contained in chapter 139 that the enactment was to apply to " any lease or tenancy commencing after this subdivision takes effect " was not carried in the amendment. But this is not indicative of an intention to restrict the application of the amended subdivision. The language of the amendment is broad, and is to the effect that no proceeding based upon the non-payment of rent can be maintained in a city of the first class or in a city in a county adjoining a city of the first class where the property is occupied for dwelling purposes, except in certain specified cases. And the fact that this amendment was not intended to limit the scope of the enactment was further shown by the provision that it did not apply to new buildings then in course of construction or commenced thereafter. If the legislature intended this chapter, or any of the others, constituting the housing statutes, to apply only to tenants then in possession, it was wholly unnecessary and very misleading to insert the provisions that the various acts did

not apply to new buildings. The fact that those provisions are contained in the statutes indicates conclusively that the legislature did intend their enactments to apply to tenants who became such after the statutes were passed, as well as to those who were in possession at that time, with the exception of tenants who should become such in new buildings then in course of construction or thereafter commenced. Chapter 139, which expressly covered tenancies thereafter commencing, did not contain any exception of new buildings. When the latter exception was inserted in the later statutes there was no longer any need for continuing the express provision of chapter 139.

In 1921 there were further amendments to these laws and their enactments on the general subject. Chapter 367 of the laws of that year amended section 1011a of the Civil Practice Act, which had formerly been section 1531a of the Code of Civil Procedure. It limited the right to bring an action in ejectment, and provided that such an action could not be maintained by a landlord against tenants in certain cities, except in particular cases which were specified. One of the exceptions was where the property was held under a co-operative ownership plan and all the apartments therein had been leased to the stockholders of the corporation for their own use " to begin immediately upon the termination of any tenancy of the apartments or flats leased by them existing on the date when this section as amended takes effect." Under this broad language a tenant who had become such since the rent laws were passed in September, 1920, could be removed. This language applies to " any tenancy." It is not confined to those who were tenants prior to October, 1920. ·

Chapters 371 and 374 of the Laws of 1921, amending earlier enactments, contain provisions that as amended they are not to apply to new buildings. The same is true of chapter 434. The legislative committee's explanation of the amendments made by this latter chapter is contained in the work by Lauer and House, already referred to, at page 313 et seq. Referring to one portion of the amendment this explanation is given (p. 314): " In the case of a new tenant who contests the reasonableness of the rent, the tenant must deposit the amount due according to the agreement. * * *." This reference to a " new " tenant plainly and, we think, conclusively shows that it was the intention of the legislature that its enactments should apply to all tenants and not merely to those in possession when the original statute was passed.

But there is still further legislation upon this subject which has a direct and important bearing upon the point under consideration.

That is found in the statutes of the current year (1922). Chapter 663 of the Laws of 1922 expressly extended the time of application of the principal Housing Laws. This statute provides: " The public emergency, which existed at the time of the enactment of the statutes below enumerated, having continued, in the judgment of the legislature, to the present time and still existing," certain specified chapters of the Laws of 1920 and 1921, dealing with the housing situation, " shall, notwithstanding any provisions in any such chapters, sections or subdivisions, remain and be in full force and effect until the fifteenth day of February, nineteen hundred and twenty-four." This enactment was the equivalent of the passage of a new statute declaring the emergency to exist and prescribing all the provisions contained in the statutes passed in the prior years. Taken in conjunction with all the prior enactments, we think, it cannot be said that the legislature did not intend the Housing Laws to apply to a tenancy created after September, 1920.

Still further support to this contention is found in the provisions of chapter 664 of the Laws of 1922. That amended a prior chapter dealing with defenses to actions for rent. A portion of the latest amendment reads: " If it appear that the defendant pursuant to the terms of a written or oral agreement for a term of one year or more has paid after the commencement of the term and after April thirtieth, nineteen hundred and twenty-one, three monthly instalments of rent in successive months, which accrued under such agreement, such defense shall not be allowed." This chapter became a law April 13, 1922. It applies to a letting for " one year or more." It seems to indicate that it is intended to apply to new lettings as well as to old. The date mentioned, namely, April 30, 1921, was the date of enactment of chapter 434 of the Laws of 1921, which it amended. The letting might commence either before or after that date. And this same chapter (664) provides that it shall not apply to new buildings (§ 12). These statutes of 1922 (Chaps. 663 and 664) became laws only a few days before the *Farnham* decision was handed down, and apparently they were not before the court, as they are not mentioned in the opinion.

As the legislative enactments do not seem to indicate the intention which has been given to them by the *Farnham* case, we feel constrained to differ with the conclusion there reached. It may be that the greatest need of the statutes originally was to protect tenants who were in possession. But if they needed protection there was then and is now need of protecting tenants who were not

27

and are not in possession. Especially is there need of protecting those (many thousands of them there must be) who were then in possession, but who have since been obliged to vacate for one of the reasons which the Housing Laws make the basis of a dispossess at the end of a term. Those tenants have been compelled to give up possession and to seek new quarters under new landlords. There is no reason why they should not be protected the same as tenants who were more fortunate and who were not required to leave their old dwellings. We agree with the opinion expressed in *Stewart* v. *Schattman*, 187 N. Y. Supp. 445, which, though referring to the statutes of April, 1920, is, we think, equally applicable to the September, 1920, enactments. There the court said: "It was the intent of the Legislature in enacting these statutes to prevent landlords from using their property for purposes of oppression. The Legislature has not expressly limited the statute to cases where the premises are occupied by a tenant who is in possession before the statute went into effect, and I can see no ground for holding that such a limitation was implied. * * *

"The conditions which enable a landlord to exact unreasonable rents from tenants in possession on April 1st enable him to exact similar rents from tenants who may seek accommodations in the landlord's premises thereafter, and the same evils result from oppressive rents so exacted. There is no reason, therefore, why we should find that the Legislature intended to limit the application of the statutes to one class of cases."

We do not think, as stated in the opinion in the *Farnham* case, that a tenant out of possession and a landlord stand "on an equality." Nor do we think that such a tenant has "a freedom of choice." Nor do we think that the legislation in question can be justified on the theory of emergency only with reference to those tenants who were in possession at the time the statutes were passed.

At the rate fixed by the court below, allowing all the expenses claimed by appellant, the net rentals from the property amount to nearly ten per cent of its assessed valuation. The landlord has no cause to complain.

Final order affirmed, with twenty-five dollars costs.

LAZANSKY and FABER, JJ., concur.

Order affirmed.