HARRY LERNER, Appellant, *v.* SADIE WOLF and JULIUS WOLF, Respondents.

Supreme Court, Appellate Term, First Department, June, 1923.

**Landlord and tenant — notice by tenant of intention to quit — when letter insufficient to meet statutory requirement — Real Prop. Law, § 229.**

In an action brought under section 229 of the Real Property Law to recover double rent for the month of October, 1922, of premises leased to defendants by plaintiff's grantor for a term ending September 30, 1922, it appeared that although the lease contained a covenant against subletting, a sublease was made with a third party by and with the written consent of the landlord given upon the exe-

cution of the lease to defendants. On September 6, 1922, the plaintiff wrote defendants inquiring whether they cared to renew their lease, to which they immediately replied that they would not do so and informed the landlord that they had notified the agent to that effect some time ago. Upon the simultaneous expiration of the lease and sublease the subtenant remained in possession. *Held*, that such reply was not a " notice of intention to quit" within the meaning of the statute, and a judgment in favor of defendants will be affirmed, with costs.

APPEAL by plaintiff, landlord, from a judgment of the Municipal Court of the city of New York, borough of Manhattan, seventh district, in favor of defendants, tenants, after a trial by a judge without a jury.

*Sigmund Honig,* for appellant.

*Manuel Neufeld,* for respondents.

BIJUR, J. This appeal raises only a question of law, the facts being undisputed. On February 28, 1921, the plaintiff's grantor leased to defendants certain premises for residence purposes for a term beginning March 1, 1921, and ending September 30, 1922. Although the lease contained a covenant against subletting, the landlord simultaneously with its execution signed a consent to such subletting to a third party for the period of the term of the lease, and such sublease was made. On September 6, 1922, the present plaintiff, who had purchased the building from the original lessor, wrote defendants inquiring whether they cared to renew their lease, to which they replied immediately that they would not do so, and informed the landlord that they had notified the agent to that effect sometime ago. When the lease and sublease expired simultaneously the subtenant remained in possession. Thereupon plaintiff brought this action expressly under the provisions of section 229 of the Real Property Law to recover double the rent of the premises for the month of October, 1922.

The judgment in favor of the defendants might well be affirmed without opinion were it not that that might leave the parties under serious misapprehension as to the basis for the decision.

The landlord, appellant, argues that the application of section 229 of the Real Property Law is manifest; that the possession of the sublessee is the possession of the defendants and that defendants cannot complain of a situation of their own making in that the subtenant is remaining in possession under operation of the Emergency Rent Laws, but that the defendants, tenants, are nevertheless responsible for that result.

The tenants, on the other hand, urge, and I personally think with better reason, that, under the Emergency Rent Laws and the implication to be drawn from the cases which have interpreted

·them (*People ex rel. Durham Realty Corp.* v. *LaFetra*, 230 N. Y. 429; *Guttag* v. *Shatzkin*, Id. 647; *440 West End Avenue, Inc.*, v. *Dempster*, 200 App. Div. 101, and in particular our recent decision in *Spector* v. *Fine*, 196 N. Y. Supp. 545), the tenant is not to be held answerable for the subtenant's holding over. It must be remembered that the theory upon which a tenant voluntarily holding over might be treated by the landlord either as a trespasser or as a tenant for a renewed term, was, in substance, that the tenant by his act and on his own responsibility was tendering this option to the landlord. *Schuyler* v. *Smith*, 51 N. Y. 309; *Kennedy* v. *City of N. Y.*, 196 id. 19; *Haynes* v. *Aldrich*, 133 id. 287. Since, however, the tenant or subtenant, as the case may be, is now authorized by statute to remain in possession after the end of his term, the implications to be drawn from his act are certainly no longer the same.

There is, moreover, a question whether the Emergency Rent Laws govern this case at all in view of the fact that the lease itself was not even made until long after September 27, 1920 (see *Farnham Realty Co.* v. *Posner*, 200 App. Div. 827); possibly modified by Laws of 1923, chapter 892. These questions need not, however, be answered because section 229 of the Real Property Law upon which the instant action is expressly grounded is wholly inapplicable. That section reads:

" § 229. Liability of tenant holding over after giving notice of intention to quit. If a tenant gives notice of his intention to quit the premises held by him, and does not accordingly deliver up the possession thereof, at the time specified in such notice, he or his personal representative must, so long as he continue in possession pay to the landlord, his heirs or assigns, double the rent which he should otherwise have paid, to be recovered at the same time, and in the same manner, as the single rent."

This statute has a rather curious history and has apparently been much misunderstood by both codifiers and commentators. It will be observed, on reference to the Real Property Law, that section 229 provides the penalty of double rent against a tenant who gives notice of his intention to quit and does not thereafter do so. Section 230 provides a similar penalty, " where on the termination of an estate for life, or for years, the person entitled to the possession demands the same * * *" and the tenant " wilfully holds over." In this apposition it is evident that section 229 relates solely to tenancies of indefinite continuance which may be terminated by the tenant's giving a technical " notice of intention to quit," and section 230 relates solely to tenancies which have a fixed ending by their very terms. This interpretation is confirmed by the context also, for section 228 relates to the " termination of

tenancies at will or by sufferance, by notice " (in behalf of the landlord).

Section 229 had its origin in the English statute of 2 George II, chapter 19; section 230 is section 1 of chapter 28 of 4 George II. The former was first enacted in this state as chapter 36 of the Laws of 1788 and continued subsequently unchanged through the Revised Laws, the Revised Statutes and the Consolidated Laws of 1896. Section 230 was first enacted in this state as chapter 14 of the Laws of 1774, re-enacted in 1788 and again in connection with section 229 in the subsequent statutes above enumerated.

Although an examination of section 229 in the light of this explanation makes its intent quite manifest, the view is confirmed by even a cursory review of the status and method of termination of the various classes of tenancies discussed in Halsbury's Laws of England, volume 18, pages 439 *et seq.*, 443 *et seq.* and 554.

Finally, it is to be observed that in the instant case there was no " notice of intention to quit," but a mere reply to an inquiry by the landlord. This consideration merely emphasizes the fact that section 229 does not apply where the tenant merely as matter of courtesy for the convenience of the landlord apprises the latter of his possible inclination toward a future tenancy after the expiration of a fixed term, but is confined to cases of indeterminate tenancies where the tenant's notice of intention to quit has a juridical cognizable significance.

Judgment affirmed, with twenty-five dollars costs.

GUY and MULLAN, JJ., concur.

Judgment affirmed.