KESBEC, INC., Plaintiff, *v.* CITY OF NEW YORK et al., Defendants.

Supreme Court, Special Term, New York County, December 27, 1946.

*James F. Dwyer* and *Francis D. Kalosky* for plaintiff.

*John J. Bennett, Corporation Counsel* (*Harry E. O'Donnell, Reuben Levy, Benjamin Offner* and *William A. Marks* of counsel), for defendants.

BOTEIN, J. This is a motion by the plaintiff for a temporary injunction. A cross motion has been made by the defendants to dismiss the complaint pursuant to subdivision 5 of rule 106 of the Rules of Civil Practice. These motions raise the question whether a license from the Commissioner of Parks to operate gasoline stations comes within the Business Rent

Law (L. 1945, ch. 314, as amd. by L. 1946, ch. 273), thereby permitting the licensee to continue operating such stations after the expiration of its license.

The action is brought for a judgment declaring that certain premises occupied by the plaintiff are covered by the act and that the plaintiff is, therefore, entitled to remain in possession of said premises until the termination of the emergency as fixed in that statute. The premises in question are located on the Henry Hudson Parkway. Pursuant to a license from the Commissioner of Parks, commencing January 1, 1942, and expiring December 31, 1946, the plaintiff has been operating two stations for the sale of gasoline and oil, tires and automobile supplies, and for repair service at those locations. The license, which is annexed to the complaint, was issued to the plaintiff after plaintiff had submitted the highest bid offered for the license to operate the stations. As licensee, the plaintiff had agreed to perform various detailed services in the operation of the stations and to maintain the stations in a certain specified fashion, all subject to control in minute detail as to methods of operation by the Park Commissioner. The plaintiff-licensee also undertook to pay to the city a specified amount for each gallon of gasoline and oil sold at the stations. The agreement between the licensee and the Commissioner of Parks of the City of New York recites that "It is expressly understood and agreed, that no building, space or equipment is leased to the licensee * * *."

Prior to the expiration date of the aforesaid license, the plaintiff was informed that it, together with any other interested operators, would be asked to submit bids for the operation of the stations after 1946. The plaintiff refused to proffer a bid, taking the position that the premises which it operated come within the scope of the Business Rent Law, and that, consequently, it could not be compelled to vacate the premises so long as it continued to pay the amounts provided for by the agreement between the licensee and the Park Commissioner. The Commissioner of Parks proceeded, nevertheless, to call for and accept bids for the premises, and the complaint alleges that the city has entered into an agreement with the corporation which has submitted the highest bid for the occupancy and operation of the premises effective January 1, 1947, for a five-year period.

The Business Rent Law defines a landlord as "An owner, lessor, sublessor * * * or other person receiving or

entitled to receive rent for the use or occupancy of * * * any business space ", and a tenant is defined as "A lessee, sublessee, licensee, or other person entitled to the possession or to the use or occupancy of * * * any business space." (§ 2, subds. [d], [e].) The term " business space " is defined as " All rental space in any city * * * ", with the exception of certain types of space not descriptive of that occupied by plaintiff (§ 2, subd. [a]).

The applicability of the statute would appear, therefore, to depend upon the renting of space under a landlord and tenant relationship. The declaration of a public emergency contained in section 1 of the Act indicates that the Legislature intended to alleviate the condition wherein " Unjust, unreasonable and oppressive leases and agreements for the payment of rent * * * " were and are " now being exacted by landlords under stress of prevailing conditions * * *."

The licensing of a gasoline station by the city certainly does not come within the ambit of the legislative intention thus expressed. The city, by licensing the plaintiff to operate gasoline stations, was merely delegating to the licensee the performance of a function which would otherwise be performed by the city. It was essential, in caring for the Henry Hudson Parkway, that gasoline and comfort stations be made available to motor cars using the highway (see *Blank* v. *Browne*, 217 App. Div. 624, 630). The first recital in the license agreement reads " Whereas, the Commissioner * * * desires for the accommodation of the public to provide Gasoline Service Stations thereon * * *."

The issuance of a license to the plaintiff was, of necessity, in pursuance of that objective, and not for the purpose of exacting rental in return for the use of space. For a very clear distinction exists as to the power of the city to lease its property and to grant licenses (New York City Charter [1938], §§ 383, 384). The authority of the Park Commissioner extends no further than " to institute and execute all measures for the improvement [of parks] * * * for ornamental purposes and for the beneficial uses of the people of the city." (New York City Charter, § 532, subd. 3.) It is illegal for the Commissioner of Parks to devote park properties to business purposes or for any use other than park use. (*Blank* v. *Browne, supra; Williams* v. *Gallatin*, 229 N. Y. 248.) In *Williams* v. *Hylan* (223 App. Div. 48, 53, affd. 248 N. Y. 616) this Department declared with respect to the author-

ity of the Park Commissioner: "If a commissioner is permitted to make such a lease he can deprive his successor of all authority over such privileges by making a lease which will extend over the entire term of such successor. We are of the opinion that the commissioner was without power to make a lease. His power was limited to granting a revocable license. (*Lincoln Safe Deposit Co.* v. *City of New York,* 210 N. Y. 34; *Tompkins* v. *Pallas,* 47 Misc. 309; *McNamara* v. *Willcox,* 73 App. Div. 451; *Brooklyn Heights R. R. Co.* v. *Steers,* 213 N. Y. 76; *Gushee* v. *City of New York,* 42 App. Div. 37.) "

Consequently, the license here issued to plaintiff must be considered to have been motivated by a public purpose and not for a business or profit purpose. Otherwise plaintiff would be relying upon a license issued without authority. It would be anomalous to restrict this sovereign power to care for public property on the basis of an act calculated to apply to situations wherein landlords take advantage of the wartime inability of tenants to find other quarters in order to exact higher rentals. The city is not here interested primarily in the receipt of rental; and the licensee's inability to duplicate the licensed premises is not a product of the war, but a normal characteristic of a franchise or license for which applicants compete. The plaintiff will be dislocated from a business it has been conducting only by license of the defendants.

Under similar circumstances, Mr. Justice Lockwood recently held that the city's right of eminent domain could not be limited by the rent control act (*Matter of City of N. Y.* [*Brooklyn-Battery T. Plaza*], 186 Misc. 603, affd. 270 App. Div. 1027). In the course of his opinion he stated (p. 609): "The obvious purpose of the Commercial Rent Law is to prohibit the exaction of unjust and unreasonable rents during the declared emergency. The act contains provisions for the determination of reasonable rent and provides that no tenant shall be removed, so long as it continues to pay the rent to which the landlord is entitled under the provisions of the Act (§ 8).

"The act does not provide that the city shall not be permitted to acquire property for a public improvement by eminent domain during the period of the housing emergency, nor can it be conceived that the Legislature intended to accomplish such a purpose by adopting an act to place a ceiling on rents."

The power of the sovereign to care for its public property is no less influential than the power of eminent domain and

it must, therefore, be concluded that the city's power to determine which applicant is entitled to a license herein is not restricted by the Business Rent Law.

Plaintiff relies upon the ruling in *A. E. F.'s, Inc.,* v. *City of New York* (295 N. Y. 381). A reading of the complaint and the annexed contract in that case readily distinguishes the facts from those in the within cause. There the Department of Marine and Aviation granted permission to use business space for a business purpose at a stipulated *rental*. Here the Commissioner of Parks granted a license to operate certain city facilities for the " accommodation of the public ". Also, in the case above cited, the major issue presented to the court was whether the physical location of the premises excluded said premises from the operation of the statute.

The fact that a certain amount is paid to the city by the licensee for each gallon of gasoline and oil sold at the licensed premises does not alter the conclusion that the license issued by the Park Commissioner does not come within the statute. The payment by the licensee to the city for the license would appear to be required under section 1 of article VIII of the New York State Constitution, which forbids the gift or loan by a city of any money or property in aid of any individual or private corporation. Indeed, it would seem that the public policy underlying this constitutional provision rather than the desire to exact a high rental is subserved by a system of competitive bidding whereby the highest bidder obtains the license to operate the stations. For a system of free, competitive bidding is one method of insuring that no personal or official preferences will be permitted to influence the city's choice from among the many applicants for the license. And when the system of competitive bidding is considered, together with the detailed instructions contained in the license for the operation of the stations, it is obvious that the receipt of money by the city was incidental to the primary purpose of developing park property for public use. The payment of moneys by the licensee to the city does not bring the instant case under the Business Rent Law and plaintiff cannot continue to occupy the licensed premises after the expiration of the license on the basis of that act.

The complaint is dismissed and the motion for temporary injunction is, therefore, denied.