WHITE-WAY ARCADE, INC., Appellant, *v.* BROADWAY TURTLE KING, INC., Respondent.

First Department, March 15, 1948.

*Walter Feldesman* of counsel (*Joseph G. Abramson,* attorney), for appellant.

*Marks F. Paskes* of counsel (*Otterbourg, Steindler, Houston & Rosen,* attorneys), for respondent.

COHN, J. The petition of the landlord alleges that a lease of business space was entered into between the parties for a period commencing April 1, 1946, and ending September 30, 1949; that about eight months after taking possession of the leased premises the tenant informed the landlord that its business was unsuccessful and that it was desirous of surrendering the lease and of being relieved from its obligations and promised to vacate the premises on January 1, 1947, if the landlord would accept such surrender. For the purpose of acceding to the tenant's wishes, the landlord entered into a formal written. agreement of surrender and release with the tenant whereby the landlord in view of tenant's desire to terminate the lease agreed to release the tenant from its obligations and the tenant in turn agreed to vacate the premises on or before January 1, 1947, and to remove all of its belongings therefrom on or before that date.

It is further alleged in the petition that on January 1, 1947, the tenant refused to vacate the premises and wrongfully continues to occupy them, although the term has expired. The petition then alleges that the Business Rent Law (L. 1945, ch. 314, as amd. by L. 1946, ch. 273) was not intended to and did not confer upon the tenant under the circumstances the right to remain in the premises subsequent to January 1, 1947, and asks for a warrant to remove the tenant from the premises.

The petition contains no allegations that would bring the case within any of the several exceptions specifically enumerated in section 8 of the Business Rent Law permitting landlords to obtain possession in certain instances. That statute provides as follows: " So long as the tenant continues to pay the rent to which the landlord is entitled, under the provisions of this act, no tenant shall be removed from any business space, by action or proceeding to evict or to recover possession, by exclusion from possession, or otherwise, nor

shall any person attempt such removal or exclusion from possession, notwithstanding that such tenant has no lease or that his lease or other rental agreement has expired or otherwise terminated, and notwithstanding the issuance of any order to dispossess, warrant or process prior to the effective date of this act, and regardless of any contract, lease, agreement or obligation heretofore or hereafter entered into which is inconsistent with any of the provisions of this act, unless: * * *.'' (L. 1945, ch. 314, § 8.)  Then follow seven enumerated subdivisions which supply the exceptions by which the right of eviction is saved to the landlord.  Admittedly, the situation presented in this case does not come within any of them.

The Appellate Term has held that regardless of the agreement of surrender and release made between the parties, and in this instance at the request of the tenant, the Municipal Court may not entertain the petition of the landlord unless he is in a position to show that possession is sought under one of the exceptions set forth in section 8 of the Business Rent Law.

We think that the Business Rent Law was never intended to apply to the facts alleged in the petition which for the purposes of the motion involved in this appeal must all be deemed true. The emergency rent legislation was enacted to meet a public emergency and the mischief which the Legislature sought to remedy was the exaction of unjust, unreasonable and oppressive agreements for the payment of rent.  This is evidenced by the preamble contained in section 1 of the Business Rent Law which reads in its pertinent part as follows: '' Unjust, unreasonable and oppressive leases and agreements for the payment of rent for office space and retail stores and other business space * * * having been and now being exacted by landlords * * * whereby breakdown has taken place in normal processes of bargaining and freedom of contract has become an illusory concept, * * * it is hereby declared that a public emergency exists, which is increasing in intensity without slackening and without promise of relief so long as present war conditions continue, and that action by the legislature is imperative and will not admit of delay. * * * '' (L. 1945, ch. 314, § 1.) That the purpose of the statute was to prohibit the exaction of unjust and oppressive leases is further shown by the report of the joint legislative committee (appointed pursuant to resolutions adopted in both houses of the Legislature on March 18, 1944) upon the basis of which emergency rent legislation was enacted. In that report (Legis. Doc., 1945, No. 2, p. 11) it is stated: '' Knowing that their tenants cannot obtain space else-

where, a considerable number of these landlords are demanding, and in many instances have obtained, exorbitant and unjust and unreasonable increases of rent when approached by their tenants for a renewal of existing leases. These demands are in many cases coupled with an insistence that the tenant sign a lease providing for a substantially longer term than that of the current rental agreement and with a reduction of services previously given. In these cases, the landlord's terms are peremptorily submitted to the tenant in ultimatum form and the latter knows that he must acquiesce or go out of business. As between landlords and tenants in this situation, freedom of contract has become an illusory concept.''

In sustaining the validity of the Commercial Rent Law (see Laws of 1945, ch. 3, § 8, as amd. by L. 1945, ch. 315, § 8), a statute arising out of the same emergency, and in upholding its constitutionality the Court of Appeals in *Twentieth Century Associates* v. *Waldman* (294 N. Y. 571, 580–581) employed the following pertinent language: `` * * * we find in the material before the Legislature ample evidence that unjust, unreasonable and oppressive leases and agreements in large volume had been exacted by landlords from tenants under the stress of prevailing conditions accelerated by the war for some time prior to the enactment of the statute. So far as such tenants are concerned, the Legislature was justified in concluding that there was no reality of consent; that their ' freedom of contract ' had become an illusory concept and that their existing leases had created, and would continue to contribute to, the public emergency. Under these circumstances we may not say that the Legislature, in protecting the grave public interests involved, could not take reasonable means to prevent the enforcement of unjust, unreasonable and oppressive rentals accruing thereafter.''

On the allegations set forth in the petition of the landlord there are to be found none of the emergency conditions which gave rise to emergency rent legislation. There was entire freedom of contract here. In reliance upon the good faith of the tenant and to assist it in accomplishing its desires to be released from the obligations of its lease, the landlord agreed to its termination, and the tenant on its part agreed to surrender the premises on January 1, 1947. Notwithstanding this solemn agreement, the tenant has refused to vacate claiming a right to continue in possession under the Business Rent Law. This statute designed to prohibit the exaction of oppressive and unreasonable agreements for the payment of rent has not the slightest application.

The courts have repeatedly held that emergency rent laws are inapplicable to cases which fall outside the purpose and intent of the statute (*Messinger* v. *Great Hudson Fur Co., Inc.*, 270 App. Div. 168; *WMCA, Inc.*, v. *Blockfront Realty Corp.*, 272 App. Div. 800, motion for leave to appeal denied, 297 N. Y. 1042; *44 West Fourteenth Street Co.* v. *Chanlan Corporation*, 73 N. Y. S. 2d 95; *Kesbec, Inc.*, v. *City of New York*, 189 Misc. 719, 721; *Cleaners Holding Corp.* v. *Trunz, Inc.*, 272 App. Div. 825; *Petti* v. *Gross*, 62 N. Y. S. 2d 13).

In *Messinger* v. *Great Hudson Fur Co.* (*supra*) this court in holding that the emergency (commercial) rent law was inapplicable to a licensee of show and display windows said: "Plaintiff's complaint has been dismissed on the ground that under the provisions of the Commercial Rent Law (L. 1945, ch. 3, amd. by L. 1945, ch. 315) he may not institute an action to evict defendant so long as the latter continues to pay rent to which the plaintiff is entitled. However, according to the allegations of the complaint, which for the purposes of this motion must be deemed true, the license granted to defendant by plaintiff to use plaintiff's display windows was not only one terminable at will but one for which defendant apparently paid no rent. Defendant, it may fairly be inferred, was merely a gratuitous licensee. The Commercial Rent Law has no application to such a relationship. The statute relates only to ' actions, proceedings and related matters involving unjust, unreasonable and oppressive rents or agreements for rent with regard to premises used or occupied for commercial purposes '. (Title of the Act, L. 1945, ch. 3.) The complaint states a cause of action and should not have been dismissed." In the case of *WMCA, Inc.*, v. *Blockfront Realty Corp.* (*supra*) this court affirmed a determination of the Supreme Court ruling that the emergency rent laws were not enacted for the benefit of persons who were merely in constructive possession of rental space in commercial buildings. *Kesbec, Inc.*, v. *City of New York* (*supra*) is another illustration of a case where the statute was held inapplicable. There the court at page 721, said:

" The declaration of a public emergency contained in section 1 of the Act indicates that the Legislature intended to alleviate the condition wherein ' Unjust, unreasonable and oppressive leases and agreements for the payment of rent * * * ' were and are ' now being exacted by landlords under stress of prevailing conditions * * *.'

" The licensing of a gasoline station by the city certainly does not come within the ambit of the legislative intention thus expressed. The city, by licensing the plaintiff to operate gasoline stations, was merely delegating to the licensee the performance of a function which would otherwise be performed by the city."

The tenant urges that a termination of the lease whether by mutual consent or expiration by its terms does not withdraw from the business tenant the protection against eviction provided in section 8 of the act which prohibits eviction of the tenant notwithstanding that " his lease or other rental agreement has expired or otherwise terminated ". The words " otherwise terminated " we hold were not intended by the Legislature to apply to a tenant who without relation to the prevailing scarcity of business space and motivated solely by a desire to be freed of a burdensome lease asked for its termination and as part of the bargain agreed to vacate. Such a tenant after inducing the landlord to cancel the subsisting lease cannot thereafter be heard to say that it " has no lease or that his lease or other rental agreement has expired or otherwise terminated " and then seek to thwart eviction under the protection of the law enacted to protect tenants from oppressive leases. Presumably the Legislature in using the language " otherwise terminated " had in mind a situation such as was presented in *Borchard Affiliations, Inc., v. Normandy Democratic Club* (65 N. Y. S. 2d 415) where the landlord had an option to terminate. (See note Fordham L. Rev., Nov., 1947, pp. 292–294.)

The argument is also made that the surrender and release agreement entered into at the request of the tenant was an agreement inconsistent with the Business Rent Law. Section 8 provides that so long as a tenant pays his rent he may not be evicted " regardless of any contract, lease, agreement or obligation heretofore or hereafter entered into which is inconsistent with any of the provisions of this act ". In this language there is a clear implication that an agreement such as this, not inconsistent with the Business Rent Law would be enforcible.

We are accordingly of the view that the petition is sufficient and should not have been dismissed since the agreement referred to therein is not one within the scope or intent of the Business Rent Law; that it was an agreement validly made for the surrender of the lease and is one entirely consistent with all the provisions of the law and is enforcible.

The determination of the Appellate Term should be reversed; the order of the Municipal Court granting tenant's motion to dismiss the petition should also be reversed, and the motion to dismiss said petition as insufficient in law should be denied, with costs to the landlord-appellant in all courts.

CALLAHAN, J. (dissenting). In my opinion the question of whether a tenancy is entitled to the protection of the emergency rent laws does not depend upon whether the particular tenant in fact had the power to bargain freely or that his rent was actually oppressive, but upon whether such tenancy comes within the definitive provisions of the law. Section 1 of the statute sets forth the basis for the legislative declaration of the existence of an emergency. The emergency having been found to exist, the Legislature provided that the statutory right of summary dispossess should not be available as against any tenant in actual possession of business space of specified classes. This tenant occupied space of one of the classes specified.

Section 8 of the statute provides, in substance, that so long as a tenant continues to pay the rent to which the landlord is entitled, no tenant shall be removed from any business space by action or proceeding to evict or recover possession notwithstanding that said tenant's lease has expired or otherwise terminated, and regardless of any contract, agreement or obligation inconsistent with any provisions of the act. The section enumerates certain exceptions. Concededly, the petition in this proceeding fails to state that the present tenancy comes within any of the enumerated exceptions. Any waiver of the protection afforded by the law is expressly made unenforcible and void by section 12 of the statute.

In view of the foregoing statutory provisions the petition is insufficient in law and the determination appealed from would seem proper.

The denial to the landlord of the statutory right of summary eviction would not mean that if a fraud has been committed by the tenant, the landlord may not have other remedies based on such fraud.

In *Messinger* v. *Great Hudson Fur Co., Inc.* (270 App. Div. 168) a mere license was involved. In *WMCA, Inc.,* v. *Blockfront Realty Corp.* (272 App. Div. 800, motion for leave to appeal denied, 297 N. Y. 1042) the so-called tenant was not in actual possession of any business space. In *Cleaners Holding Corp.* v. *Trunz, Inc.* (272 App. Div. 825) the tenant had vacated the premises pursuant to notice, and it was held that under such

circumstances he might not recover the damages provided for tenants improperly evicted.

I, therefore, dissent and vote to affirm the determination of the Appellate Term.

PECK, P. J., and VAN VOORHIS, J., concur with COHN, J.; CALLAHAN, J., dissents in opinion in which DORE, J., concurs.

Determination of the Appellate Term and final order of the Municipal Court reversed, and motion to dismiss petition denied, with costs to the landlord-appellant in all courts. Settle order on notice.