Eder, J.
(dissenting in part). I am in agreement with my colleagues on all matters determined on this appeal except that of double rent for the month of February, 1954. It seems to me that a proper construction of the applicable statutes supports the award to defendant landlord of such additional rent.
Plaintiff, being in possession of commercial premises in defendant’s building under an expired lease, notified defendant by registered mail on December 21, 1953 that it would vacate by January 31, 1954. However, on January 27, 1954 it sent a second registered letter advising that it would vacate by the end of February, 1954, and on February 25 it did move out.
Tenant’s notification was in purported compliance with the provision therefor added by chapter 416 of the Laws of 1952, effective April 3, 1952, and inserted in subdivision (g) of section 8 of the Commercial Rent Law and subdivision (g) of section 8 of the Business Rent Law. The legislative commission had then reported that statutory tenants were in many instances moving out without notice to their landlords and it accordingly suggested that tenants be required to give 30 days’ notice or pay an additional month’s rent.
*507 The amendment (as amd. by L. 1953, chs. 451, 452) reads: “ Any tenant, being in possession under an expired lease or tenancy or as a monthly or statutory tenant, who vacates premises without giving the landlord thirty days’ written notice by registered mail of his intention to vacate shall be liable to the landlord for an additional month’s rent.”
This provision quite evidently was intended as a counterbalance to the right granted by statute to tenants to remain in possession or remove at will, and as a means of protecting landlords against being caught short by the unexpected removal of tenants. Landlords were thereby given 30 days in which to procure and make arrangements with prospective tenants. Failing the requisite notification tenants were penalized an additional month’s rent — a form of liquidated damages to compensate landlords for whatever damages they might have been caused in any such case.
It is obvious that the entire purpose and meaning of this provision would be thwarted if a tenant were permitted to adopt the stratagem of this plaintiff. If a tenant could without responsibility of any kind disregard his own notice and render himself immune from liability by the mere expedient of sending a second notice just prior to the expiration of the first (and possibly, repeating the same tactic again and again until able to consummate his moving plans), his landlord would not only have lost the benefit intended by the amendment but actually would have been placed in an even more disadvantageous position. Whatever excuse or justification a tenant might have for his failure to vacate in accordance with his first notice, it is evident that his landlord — who in this instance is the party to be protected notwithstanding the amendment being made part of the rent control laws — would be involved in difficulties with prospective tenants, unable to carry out binding commitments and left in confusion and uncertainty. Nor could he rely on the second notice of a proved defaulter. Such procedure on the part of a tenant must necessarily result in waste, expense and damage for Ms landlord in addition to the element of uncertainty as to the time of actual removal — the very ov.il which the Legislature determined to cure by tMs amendment.
It is no answer to suggest that landlord may bring an eviction proceeding based on tenant’s notice of intention to vacate (§ 8, subd. [g], as amd. by L. 1949, ch. 534). Not only would there be delay and expense to landlord in that proceeding; but the essential point is that by limiting landlord to such a remedy no effect would be given to the 1952 amendment.
*508 In construing statutes “ the primary consideration of the courts is to ascertain and give effect to the intention of the Legislature.” (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 92.) “ [C]ourts should look at the old law, the mischief, and the remedy, and construe the act in question so as to suppress the evil and advance the remedy.” (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 95.) Although courts have no authority to supply omissions from statutes, “ such a construction will be placed on an act as will not suffer it to be eluded” (McKinney’s Cons. Law of N. Y., Book 1, Statutes, § 144).
The question here is whether the intent of the Legislature to protect landlords by requiring a 30-day notice of removal can be fully carried out and implemented despite the failure to provide explicitly for the contingency of tenants remaining after the date specified in the notice. Although specific reference to such a situation would of course have removed all doubts, it is my view that practical and logical considerations as well as a long-standing statute covering that contingency require that the legislation will be effectuated by holding this plaintiff liable for an additional month’s rent for February, Í954.
It should first be noted, as previously indicated, that the sending of any subsequent notice must be regarded as wholly ineffective to relieve a tenant from liability for failure to vacate in accordance with his first notice. Treating, then, all subsequent notices as nugatory, we must conclude that a tenant who remains after the date specified in his first notice but removes after sending a subsequent notice has in legal contemplation vacated “ without giving the landlord thirty days’ written notice by registered mail of his intention to vacate. ’ ’ It follows then that such a tenant is liable “ for an additional month’s rent.”
This problem may also be approached from the perspective of tenant’s continuance in possession. Since a subsequent notice has no legal effect, a tenant must assume all responsibility for remaining after the date set forth in his original notice. And for such unjustified continuance in possession there has been for hundreds of years a specific statutory enactment imposing liability for double rent.
Section 229 of the Real Property Law provides: “If a tenant gives notice of his intention to quit the premises held by him, and does not accordingly deliver up the possession thereof, at the time specified in such notice, he or his personal representatives must, so long as he continue in possession, pay to the landlord, his heirs or assigns, double the rent which he *509 should otherwise have paid, to be recovered at the same time, and in the same manner, as the single rent. ’ ’
Section 229 traces its origin to an early English statute adopted by the Colonies and enacted and re-enacted in this and other States. Its penalty of double rent, however, does not apply where a tenant as a matter of courtesy or act of “ supererogation ” (Regan v. Fosdick, 19 Misc. 489, 491) notifies his landlord of his intention to vacate; but 6 ‘ is confined to cases of indeterminate tenancies where the tenant’s notice of intention to quit has juridical cognizable significance ” (Lerner v. Wolf, 121 Misc. 114, 117). It is true that prior to 1952 there was no obligation on the part of a statutory tenant to notify his landlord in advance of his removal and accordingly section 229 could not then be invoked against a statutory tenant who might remain after voluntarily giving notice. But after the 1952 amendment to subdivision (g) of section 8 a statutory tenant’s notice of intention to quit acquired “ a juridical cognizable significance ”, since he was now legally obligated to give the statutory notice or suffer the penalty of additional rent. There appears to be no sound reason why section 229 should not be invoked and applied in this case.
Oases, such as those cited in the Per Curiam opinion, decided in O. P. A. days and holding that local double-rent laws were superseded by the Federal act which prohibited the recovery of rent in excess of that legally permissible under the act, are not in point. Even then it was held that where the O. P. A. authorized a landlord to proceed with an eviction under local law, double rent imposed by a local statute upon tenants who obstinately refused,to vacate despite notice was recoverable; that a penalty of this kind for a tenant’s willful disregard of his obligation was not inconsistent with rent regulations which were intended for the protection only of those whose right of occupancy was established under law (Stovall v. Gardner, 203 Miss. 527; Kruse v. Ballsmith, 332 Ill. App. 301).
The O. P. A. has long since ceased to exist, and after 1952 no possible conflict with any rent control law could arise from the imposition of penalty rent either for vacating without the statutory notice or continuing in possession despite the notice. When a commercial or business tenant gives notice of intention to vacate, he removes himself from the entire field of rent control (White-Way Arcade v. Broadway Turtle King, 273 App. Div. 281, 285 decided in 1948, holding that such a case fell “ outside the purpose and intent of the statute ” and authorized his eviction even in the absence of statutory provision therefor; subdivision [g] of section 8, amended expressly in *510 1949 [ch. 534] to incorporate this principle as one of the statutory grounds for eviction; section 13 of the Commercial Bent Law and section 12 of the Business Rent Law [L. 1945, chs. 3, 314, as amd. by L. 1950, chs. 326, 327] decontrolling space then vacant or thereafter vacated).
The commercial and business rent laws did not effect a repeal of any existing statutes, but simply provided that “ To the extent that the provisions of this act are inconsistent with the provisions of any general, special or local law or charter provisions, the provisions of this act shall be controlling.” (Commercial Rent Law, § 14; L. 1945, ch. 315, as amd.; Business Rent Law, § 13; L. 1945, ch. 314, as amd.)
The narrow question thus posed in this situation is whether, following the 1952 amendment to subdivision (g) of section 8, the provisions of section 229 of the Beal Property Law are to be deemed inconsistent with the provisions of the Commercial Bent Law.
After the effective date of the amendment the collection of penalty or additional rent in excess of that1 ‘ legally permissible under emergency rent legislation” was expressly authorized in such legislation itself. Thereafter there could be no possible basis for finding any inconsistency between section 229 and the commercial or business rent laws as thus amended. No element of repugnancy to rent control could thereafter be said to be involved in charging penalty rent to a tenant who had taken himself out of the protection of the statute.
The only serious problem is whether we may say that, despite the lack of explicit provision in the amendment, section 229 is applicable in the circumstances here disclosed.
We observe, first, that the question of inconsistency having been eliminated, no legal obstacle remains to prevent the application of any existing statute to a state of facts coming within its express terms. Here, moreover, an established principle of statutory construction fortifies the conclusion that the provisions of section 229 shall be deemed applicable. Statutes in pari materia, i.e., dealing with the same subject matter, are to be construed together. “ When enacting a statute the Legislature is presumed to act with deliberation and with knowledge of the existing statutes on the same subject, and earlier statutes are therefore properly considered as illuminating the intent of the Legislature in passing later acts, especially where there is doubt as to how the later act should be construed.” (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 222.)
It may accordingly be presumed that the Legislature, when it enacted the 1952 amendment to subdivision (g) of section 8, *511 had in contemplation the double rent chargeable pursuant to section 229 of the Real Property Law, to a tenant who might send the statutory notice but fail to vacate at the time specified therein.
But, regardless of indulgence in any such presumption, it is clear upon analysis that section 229 actually is the counterpart of the 1952 amendment of subdivision (g) of section 8. The latter imposes liability for additional rent upon a tenant who fails to give notice of intention to vacate, while the former imposes similar liability if he does give the notice but fails to vacate at the time specified. The former is not inconsistent with the latter; indeed, it is complementary to it and may be regarded as its auxiliary weapon. Proper implementation of the amendment to prevent its nullification by the method of repeated notices adopted by this tenant authorizes the application of penalty rent provisions.
Whether that penalty should be one additional month’s rent or double rent so long as tenant continues in possession, is a matter which should be clarified by the Legislature. As I have pointed out, if one views such a tenant’s procedure from the perspective of his moving out without the proper statutory notice, the penalty is one additional month’s rent (Commercial Rent Law, § 8, subd. [g]); while if one.views it from the perspective of his continuance in possession after the time specified in his first and only effective notice, the penalty is double rent during the continuance (Real Property Law, § 229). In this particular case, since plaintiff stayed but one extra month, there is no difference in the penalty. But other situations may arise and hence the need for clarification.
I conclude therefore that the trial court correctly found plaintiff liable for additional rent for the month of February, 1954 and vote to modify the judgment only in the other respects noted in the Per Curiam opinion. This would result in a net judgment for defendant in the amount of $308 and costs.
Hofstadter and Tilzer, JJ., concur in Per Curiam opinion; Eder, J., dissents in part in opinion.
Order affirmed, etc., and judgment reversed, etc.