PAUL KAPLAN et al., Copartners Doing Business under the Name of PARADISE WINE & LIQUOR Co., Plaintiffs, *v.* MANUFACTURERS TRUST COMPANY et al., Defendants.

Supreme Court, Special Term, Bronx County, November 29, 1945.

*William Roth* for plaintiffs.

*Gerard I. Walters* for Manufacturers Trust Company, defendant.

*Arnold B. Elkind* for Abraham Adler, defendant.

HAMMER, J.   In this action all of the parties seek a declaratory judgment of their respective rights in the real property situated at the southwest corner of Grand Concourse and Fordham Road in the borough of The Bronx, city of New York.   The property, improved with a one-story building, is known as 2487 Grand Concourse and 142 East Fordham Road.

The predecessor in interest of Juli Holding Corporation, which latter corporate defendant now owns the ground lease of the premises, entered into a written agreement of lease with the Capitol National Bank under which it demised to the bank the entire premises in question in this action.   That bank was later merged into the defendant Manufacturers Trust Company. The annual rental reserved in the lease was $13,000.   The entire premises were rented and used for banking rooms and purposes, including safe-deposit vaults.

In 1942, the bank, for reasons which do not appear in the record, discontinued its business at that location and subsequently sublet the entire premises to three separate tenants. The premises leased to the bank were an area of approximately thirty-three feet six inches frontage on Grand Concourse by about fifty-two feet in depth, together with a small abutting interior area on the south used as vault space, and an area adjoining and contiguous, fronting nineteen feet on Fordham Road, the latter portion of the space being known as 142 East Fordham Road. The bank, with the owner's consent, proceeded to sublease the space.

The bank leased a portion of the space to plaintiffs, on January 5, 1943, for a term commencing March 1, 1943, and ending September 29, 1945, at an annual rental of $3,000, payable in monthly installments. The premises fronted on and were known as 2487 Grand Concourse, were approximately twenty feet in width by approximately fifty-two feet in depth. The leased premises, altered into a separate store, were to be used for " a retail package liquor store ".

On September 23, 1942, the bank, by written agreement, leased to defendant Adler a portion of the premises known as 142 East Fordham Road for a term commencing November 15, 1942, and ending September 29, 1945, at an annual rental of $3,500 for the first ten months and fifteen days, and an annual rental of $3,600 for the remainder of the term. The portion of the premises altered into a separate store is roughly L-shaped, fronting on Grand Concourse, with a frontage of about fourteen feet, known as 2489 Grand Concourse and extending easterly about fifty-two feet, where in an L-shape it turns about twelve feet to Fordham Road, with an approximate frontage of nineteen feet, and is known as 142 East Fordham Road.

The bank, by written agreement, leased the vault space to defendant Fahrer, who had an adjoining store into which it was integrated, for a term ending September 29, 1945, at a rental of $300 per year, payable in monthly installments.

The bank gave written notice of its desire to and purpose of surrendering the premises to the owner. The bank's sublessees, however, have made known to the bank and to the owner their purpose of continuing in occupancy of their respective premises on and after September 30, 1945. Both the bank and the owner deny any right in the sublessees to continue such occupancy, the bank insisting, however, that, regardless of whether the sublessees have such right, the bank has surrendered

its possession. The owner, on the other hand, alleges that if the sublessees have any right to continue their occupancy, it is entitled to hold the bank for the entire rent of $13,000 per year which the bank has been paying under its lease from the owner.

There is no disagreement among the parties concerning either the emergency rent or the fair and reasonable rent for the vault space occupied by defendant Fahrer, and I find that the amount thereof is $345. The subtenants concede that, in any event, the owner would be entitled to receive the amount reserved as rent in the lease to the bank and which the bank had paid to the owner, of $13,000, and that the emergency rent would be $13,000 plus 15%.

It is clear that the plaintiffs and defendants who are subtenants, hold over under their claims, respectively asserted; that they do so under protection of chapter 314 of the Laws of 1945, as statutory tenants. It is equally clear that the bank did everything it could to notify the defendant owner that it was not holding over, but on the contrary was surrendering to the defendant owner its possession and right thereto as tenant under the agreement of lease dated May 18, 1926. As neither the subtenants nor the bank are holding over within the implication of the old rule of *Haynes* v. *Aldrich* (133 N. Y. 287) and *Adams* v. *City of Cohoes* (127 N. Y. 175, 182), they may not be treated as tenants for another year under the terms and rent reserved in the agreement of lease.

In *Herter* v. *Mullen* (159 N. Y. 28, 34–35) it was stated: " The principle upon which the rule is founded is that the holding over is such an act of the tenant that the law implies a contract on his part, or leasing of the premises for another year. But whenever the law implies a contract from the act or conduct of the party, the act itself, whatever it may be, must be voluntary. The law does not imply a contract or obligation from an act of the party which proceeds from mistake or fraud, or which results from force or coercion of any kind, or is due to any stress of circumstances which involves peril to his life or that of some member of his family. To infer a promise or contract from any act plainly resulting from such causes would manifestly be contrary to reason and justice."

It is obvious that the bank did nothing of its own volition from which the law could or would imply an agreement to lease or a leasing of the premises on its part for another year. The implications arising out of its conduct are all to the contrary and connote the intention not to renew the lease but to surrender possession. The rights which the subtenants or any

of them have to continue their occupancy against the demand of the main tenant and the owner that they and each of them surrender possession, they assert, are obtained not from the lease each had with the bank but from chapter 314 of the Laws of 1945.

The provisions of that statute, insofar as they are appropriate here, are as follows: " § 2. Unless expressly otherwise provided, whenever used in this act, the following terms shall mean or include: * * * (d) ' Landlord.' An owner, lessor, sublessor, receiver, trustee, executor, assignee, or other person receiving or entitled to receive rent for the use or occupancy of the whole or a part of any business space.

" (e) ' Tenant.' A lessee, sublessee, licensee, or other person entitled to the possession or to the use or occupancy of the whole or a part of any business space."

Section 8 reads as follows: " So long as the tenant continues to pay the rent to which the landlord is entitled, under the provisions of this act, no tenant shall be removed from any business space, by action or proceeding to evict or to recover possession, by exclusion from possession, or otherwise, nor shall any person attempt such removal or exclusion from possession, notwithstanding that such tenant has no lease or that his lease or other rental agreement has expired or otherwise terminated, and notwithstanding the issuance of any order to dispossess, warrant or process prior to the effective date of this act, and regardless of any contract, lease, agreement or obligation heretofore or hereafter entered into which is inconsistent with any of the provisions of this act * * *."

There are, of course, exceptions provided for, but none of same are urged as of any concern here.

There is no relationship of landlord and tenant now existing between the bank and the owner or between the bank and the subtenants; that relationship ceased on September 30, 1945. (*Stern* v. *Equitable Trust Co.*, 238 N. Y. 267.) In that case in construing the effect of the Emergency Rent Laws then prevailing (L. 1920, chs. 130–139; L. 1920, Ex. Sess., chs. 942–945, 947–952; L. 1922, chs. 663, 664; L. 1923, ch. 892) the court used language significantly appropriate here. It stated, at page 270: " The tenant does not offer to remain in possession of the premises. He insists upon doing so. The landlord does not accept his proposition. The law forces it upon him." Here it is not the bank which insists on remaining; it is the subtenants. The bank's insistence is on surrendering possession. However, if the subtenants are within the protective

provisions of the statute, the bank is as powerless in respect of the subtenants as is the owner, and the law would force the occupancy of the tenants upon the owner who under chapter 314 of the Laws of 1945 would be their statutory landlord.

Clearly the bank is entitled to a judgment declaratory of its rights and that it is out of possession of the demised premises, not a holdover tenant and is under no obligation to pay rent to the defendant owner. Whether the other parties are so entitled may be open to question. However, there are risks involved by the situation in which the parties find themselves as well as in respect of the amounts which can be demanded or agreed upon as rent. In addition, the very term of this court in the county of Bronx to which this cause comes for trial and judgment is engaged in the hearing and disposition of applications for the fixation, under the statute invoked here, of fair and reasonable rents of properties in Bronx County.

The exercise of jurisdiction and the rendition of judgment declaratory of their rights as sought by all of the parties to this litigation, under all of the circumstances, is accordingly deemed proper and appropriate. The statute itself prescribes and declares the rights, obligations and procedure to be followed by landlords and tenants. There is no reason for any redeclaration in respect of same here. Whatever may be the procedure required by the statute, it appears just and equitable that the sublessees, who desire and, in fact, have continued to occupy the entire space which previously was in the possession of the bank under its lease with the owner, should pay the rent which the owner has been receiving under the main lease with the bank.

It is also clear that the emergency rent to which the owner, as statutory landlord, should be entitled is $13,000, which is also the amount paid in 1943, plus 15% provided by the statute, a total of $14,950. Indeed, as pointed out before, this is so obviously fair and equitable that the subtenants have offered to pay that very amount to whichever of the defendants, that is, either owner or bank, and in whatever proportion, may be directed by the court. Prorating that rent to and among the tenants and the two subtenants, the following result is reached:

| | |
|---|---|
| Vault space (Fahrer) | $ 345 |
| Plaintiff Kaplan's store | 6,255 |
| Defendant Adler's store | 8,350 |
| Total | $14,950 |

It is conceded the defendant Fahrer was served with summons and complaint, did not answer or appear and is in default and the vault space previously occupied by defendant Fahrer is now vacant and was vacated prior to the expiration of the sublease thereof. The determination in respect of that space is made only for the purpose of prorating the rents otherwise payable.

To the extent indicated, declaratory judgment will be granted. Findings and conclusions have been waived. Submit judgment on notice.