WMCA, Incorporated, Plaintiff, *v.* Blockfront Realty Corp. et al., Defendants, and New Grill, Inc., et al., Impleaded Defendants.

Supreme Court, Special Term, New York County, December 11, 1946.

*Milton Small* for plaintiff.

*Charles H. Tuttle* and *John R. Brook* for Blockfront Realty Corp., defendant.

*Samuel Ross Balin* for Girard Trust Company, as trustee under the will of John J. Emery, deceased, and as trustee under a deed of trust made by Lela A. Emery, and others, defendants.

*A. A. Vigard* and *Joseph D. Karp* for Warner Bros. Pictures, Inc., impleaded defendant.

*Louis S. Lewis* and *Edwin A. Lewis* for New Grill, Inc., impleaded defendant.

*Salvatore Viscardi* for Nola Studios, Inc., impleaded defendant.

*Leo L. Hoffman* for Paull-Pioneer Music Corp., impleaded defendant.

*Max Schoengold* for Stratoliner Lunch, Inc., impleaded defendant.

*Louis Ferkin* for Wilfred Laboratories, Inc., impleaded defendant.

*Leopold Friedman* and *Joan Friedlander* for Times Amusement Corp., impleaded defendant.

*Ralph W. Brown* for New York Telephone Company, impleaded defendant.

WALTER, J. By lease dated April 5, 1927, the land and buildings on the west side of Broadway between 51st and 52nd Streets, known as 1651–1665 Broadway, 215 West 51st Street, and 222–226 West 52nd Street, were leased for a term ending at 12:00 o'clock noon on January 1, 1946. An option to the lessee to renew for a further term of twenty-one years upon giving notice before January 1, 1945, was not exercised. The lease provided that the lessee would not assign without the consent of the lessor, but that that restriction should not apply to a subletting of the demised premises or any part thereof.

By September, 1945, the leasehold had become vested in Melville Shoe Corporation, and various parts of the building then on the premises (a four-story and penthouse commercial building) had been sublet to various subtenants for terms which expired on or before December 31, 1945, except that the term of one such subtenant expired on January 1, 1946.

In September, 1945, Melville leased the entire premises to Blockfront Realty Corporation for a term of three months from October 1 to December 31, 1945, and assigned to Blockfront the existing leases of the subtenants. Such lease for a term one day short of Melville's own term left a reversion in Melville and constituted a subletting, and not an assignment, and was not a violation of the owner's rights as is here contended by the owner (*Herzig* v. *Blumenkrohn,* 122 App. Div. 756, 758; *Woodhull* v. *Rosenthal,* 61 N. Y. 382, 391).

As no notice of intention to renew the lease of April 5, 1927, had been given by January 1, 1945, various of the subtenants

negotiated with the owner for new leases for terms subsequent to January 1, 1946, and Blockfront demanded of various subtenants that they execute new leases with it, purporting, in so doing, to act under subdivision (e) of section 8 of chapter 3 of the Laws of 1945, as amended, which provides that under certain circumstances a tenant who refuses a landlord's demand for the execution of a renewal lease may thereby lose his statutory right to remain in possession.

The parties were thus uncertain as to what their rights and positions would be after January 1, 1946, when the lease of April 5, 1927, would expire, and this action was commenced on December 26, 1945, to obtain an adjudication and declaration of such rights and an injunction restraining interference with such rights until such determination could be had.

If there were no Emergency Rent Control Laws, it would seem clear, and I understand it to be undisputed, that the leases of Melville and Blockfront having expired by January 1, 1946, the owner would be entitled to possession of the premises, subject to such leases with subtenants as remained in existence, and entitled to collect the rents specified in such leases.

Because there are such Emergency Rent Control Laws (L. 1945, ch. 3, as amd. by L. 1945, ch. 315, as amd. by L. 1946, ch. 272; L. 1945, ch. 314, as amd. by L. 1946, ch. 273), it seems equally clear, and I understand it to be undisputed, that all the several subtenants except Warner Bros. Pictures, Inc., are entitled to remain in possession of their respective spaces so long as they pay the rent provided in and otherwise comply with such laws. The reason for the exception of Warner Bros. Pictures, Inc., is that that concern occupies only space for its theatre entrance and lobby and such space does not come within the protection of those laws.

The question to be decided therefore is with respect to the rights of the owner and Blockfront. Counsel for the latter state that question as being whether the Emergency Rent Control Laws protect Blockfront in its possession after the expiration of its lease. Another statement of the question as set forth in the briefs is whether the owner or Blockfront is entitled to act as landlord of the subtenants. Counsel for the owner rest their argument upon the proposition that those laws confer holdover rights only upon tenants who themselves physically occupy business space for their own business and do not protect the merely technical possession of an intermediate tenant who uses his possession merely as a means of collecting rents from subtenants.

Perhaps none of those statements is entirely adequate or complete, but this is an instance in which decision is more important than accurate formulation of the question to be decided, and I therefore content myself with saying that the case poses the situation of a commercial building leased in its entirety to one tenant and parts thereof sublet to various subtenants, all leases having expired after the enactment of the Emergency Rent Control Laws.

The presently important declaration in those laws is that no tenant shall be removed from any commercial space or business space, notwithstanding the expiration of his lease, except as therein authorized (L. 1945, ch. 3, § 8, as amd.; L. 1945 ch. 314, § 8, as amd.). '' Tenant '' means or includes (L. 1945, ch. 3, § 2, subd. ·[i]) '' A lessee, sublessee, licensee, or other person entitled to the possession or to the use or occupancy of the whole or a part of any commercial space.''

'' Commercial space '' is (§ 2, subd. [a]) space used or occupied for commercial purposes other than space used or occupied as a store or office.

'' Commercial purposes '' mean or include (§ 2, subd. [b]) '' The manufacture, sale, resale, processing, reprocessing, displaying, storing, handling, garaging or distribution of personal property.''

'' Business space '' means or includes: All rental space other than commercial space, dwelling space, piers, docks and wharf properties, and places of public assembly (L. 1945, ch. 314, § 2, subd. [a]).

Upon getting its sublease from Melville, Blockfront entered into technical and constructive possession of the entire building. It, of course, did not physically occupy the rentable space sublet to the subtenants; but it did all the things necessary to operate and service the building and physically occupied the hallways, shafts, stairs, and other spaces provided for and necessary for that purpose. It did not use or occupy any space for the manufacture, sale, resale, processing, displaying, storing, handling, garaging, or distribution of personal property except as it stored the coal and other materials and equipment necessary for use in operating and servicing the building for the subtenants. In short, it occupied and used such parts of the building as were necessary and useful in carrying on the business of operating the building and carried on that business and no other, which in practical terms seems to mean that it uses the working space in the building, as distinguished from the rental space therein,

and uses such working space as a means of earning the difference between the rent it can collect from the subtenants and the cost of running the building and giving such service therein as is necessary in order to earn those rents.

Considering the language of the Emergency Rent Control Laws in the light of those declared objects and purposes, I cannot believe that their laws were intended to or do confer upon any tenant whose lease has expired a right to remain in possession of such working space for such purpose. A contrary holding would mean in effect that the laws make a tenant of a commercial building practically the owner thereof; and that certainly was not intended.

It does not seem necessary to detail the various considerations which lead me to that conclusion.

No case presenting this situation or deciding the question here presented has been cited or found. *Kaplan* v. *Manufacturers Trust Co.* (186 Misc. 784) and *Joandor Realty Corp.* v. *Zion* (184 Misc. 595), cited by Blockfront as particularly pertinent, seem to me not even remotely in point.

While, of course, not here controlling, it is worthy of mention that the emergency housing and rent laws of 1920 were held not to protect tenants of dwelling space who occupied such space through subtenants (*Jackson* v. *Grey,* 197 App. Div. 656; *Nystad & Krassner* v. *Zerbe,* 210 App. Div. 217; *Goodwin* v. *Humbert,* 216 App. Div. 295; *Morgenroth* v. *Emert,* 118 Misc. 260); and under the present laws here involved it has been held that the provision authorizing the landlord to recover possession when he needs the space for his personal use does not apply to a landlord who is himself a tenant (*Trade Accessories* v. *Bellet,* 184 Misc. 962, appeal dismissed 295 N. Y. 763; *Blitzkrieg Amusement Corp.* v. *Rubenstein Bros. Drinks,* 184 Misc. 975; *Straus-Duparquet, Inc.,* v. *Moglen,* 185 Misc. 657, affd. 185 Misc. 831; *Tishman Realty & Constr. Co.* v. *Wolf,* 185 Misc. 317).

Counsel for Blockfront have laid some stress upon the fact that the lease of April 5, 1927, provided for the demolition and removal of the buildings then upon the land and the erection of a new building which should be and remain the property of the lessee, and also provided that upon the expiration of that lease such new building should be demolished and removed if the lessor so elected, and if it did not so elect, it should be conveyed to the lessor for $1,000.

The lessor did not elect to have the new building demolished and removed, and on January 1, 1946, there was delivered a

deed, dated December 28, 1945, by which Melville conveyed the building to the lessor for a stated consideration of $1,000.

The argument, as I understand it, is that the building which was erected after the making of the lease of April 5, 1927, was the property of Melville, not of the owner of the land, until the delivery of that deed on January 1, 1946, and such owner of the land thus became the owner of the building only by succession to Melville and only on January 1, 1946.

Considering the lease as a whole, however, I think no such effect can be given to the words in the April 5, 1927, lease that the new building "shall be and remain the property of the lessee" and even if they were given such effect, I cannot see that that has any determining effect upon the question here presented.

I conclude, therefore, that since January 1, 1946, Blockfront has not had and does not now have any right or interest in or to any part of the premises in question or any right to remain in possession of the whole or any part thereof or any right to receive or retain any rent paid or payable by any of the subtenants since that date; that plaintiff and the impleaded defendants (subtenants) other than Warner Bros. Pictures, Inc., are entitled to continue in possession and occupancy of the respective spaces occupied by them respectively so long as they comply with the Emergency Rent Control Laws and any leases existing between them and the owner of the premises; and that subject to such rights of plaintiff and the impleaded defendants, said owner is entitled to possess and use the premises in question and to exercise all rights of ownership thereof.

The foregoing is intended as the decision required by the Civil Practice Act and as the required direction for judgment, but if any party feels that the foregoing does not dispose of all issues tried and that further adjudications or declarations are necessary to dispose of the entire controversy, suggestions to that effect may be submitted along with a proposed judgment and such suggestions will then be considered and passed upon.