CHARLES B. BENENSON et al., Plaintiffs, *v.* JOHANNA L. RITZMANN
et al., Defendants.

CHARLES B. BENENSON et al., Plaintiffs, *v.* JOHANNA L. RITZMANN,
Defendant.

CHARLES B. BENENSON et al., Plaintiffs, *v.* WACHSMAN & Co. INC.,
Defendant.

CHARLES B. BENENSON et al., Plaintiffs, *v.* 108 EIGHTH AVENUE
CORPORATION, Defendant.

CHARLES B. BENENSON et al., Plaintiffs, *v.* MIRABITO MEAT Co.
INC., Defendant.

CHARLES B. BENENSON et al., Plaintiffs, *v.* EUGENE SCHAEFER,
Individually and as Sole Surviving Executor of MARTHA
SCHAEFER, Deceased, et al., Defendants.

Supreme Court, Special Term, New York County, November 30, 1951.

*Lawrence Cohen, Emanuel Lubin, Joseph V. McKee* and *John C. O'Malley* for plaintiffs.

*David A. Steinbock* for defendants.

MATTHEW M. LEVY, J. The plaintiffs, owners of certain real property and claiming to be owners of the buildings erected thereon, sue the five defendants for an injunction to restrain them from collecting rents from the several occupants of the premises and from interfering with the plaintiffs in exercising their rights as owners; for a declaration that the defendants have no interest of any kind in the property since April 30, 1951, that the defendants surrendered the premises, and that the occupants thereof attorn to the plaintiffs as owners and landlords thereof; for an accounting from the defendants for all moneys received by them as rent from such occupants since April 30, 1951; and for other relief.

The premises involved are located at Nos. 102, 104, 108, 112 and 116 Eighth Avenue, borough of Manhattan, city of New York, and each parcel is improved with a five-story brick build-

ing with basement, having stores on the ground floor and apartments above, constructed of brick and concrete walls permanently attached to the land. The plaintiffs obtained title to the real estate by deed dated February 2, 1951, from Orme Wilson and R. Thornton Wilson, the owners. This deed by its terms conveyed both the land and the buildings thereon. The buildings, some few decades old, were not erected at the time by the then owners of the fee, but by the then lessees under certain lease provisions which, it is claimed by defendants, reserved to the lessees the title to the buildings. Such leases, it is urged, were renewed with continued separation of the titles of land on the one hand and of buildings on the other. At the time of the conveyance to the plaintiffs, in February, 1951, each of the five parcels was subject to a twenty-year lease, executed in 1931, and expiring on April 30, 1951; and the defendants are either the lessees named in the leases or have succeeded to the rights of the lessees by assignment, descent or operation of law. At the time of the execution of the 1931 leases, the lessors therein named were the owners of the fee and landlords of the premises. The successors in interest to the said lessors were the Wilsons, the grantors in the 1951 deed running to the plaintiffs. For some time prior to the taking of title by the plaintiffs and up to the expiration date of the leases, each of the defendants had separately sublet all portions of the buildings to various subtenants who occupied the premises and no part was physically occupied by any of the defendants for his own use.

Even though the written leases to the defendants by their express terms expired on April 30, 1951, they hold over and continue to maintain, as against the plaintiffs, the right to dominion over the property and to collect rents from the subtenants. The defendants contend, firstly, that, when the premises were conveyed to the plaintiffs by the deed dated February 2, 1951, the plaintiffs' grantors were not the owners of the buildings on the land and therefore they could not convey them to the plaintiffs, or, to put it differently, that the defendants were the owners of the buildings under their respective leaseholds; and, secondly, that the tenancies, under which the defendants claimed possession of the property leased to them, were protected by the New York State Commercial Rent Law (L. 1945, ch. 3, as amd.) and that the interest of each defendant in his respective lot could not be disturbed except in accordance with such rent control legislation.

The defendants Ritzmann, 108 Eighth Avenue Corporation and Mirabito Meat Co., Inc., claim ownership of the buildings on

their respective lots through leases entered into in 1911 and renewal leases executed in 1931. The defendants Schaefer claim ownership through an 1891 lease, a 1911 renewal lease and a 1931 second-renewal lease. The defendant Wachsman & Co., Inc., claims ownership through a short-term lease dated March 23, 1931, for the period March 15, 1931, to April 30, 1931, and a 1931 renewal lease. In view of these claims, it becomes necessary to examine the pertinent clauses of the original 1891 lease and the renewal leases of 1911 and 1931, and the short-term 1931 lease.

The 1891 lease, through which the defendants Schaefer claim ownership, was for an initial term of twenty years. It indicates that a building was '' erected on the said demised premises under a lease heretofore granted '' to the lessees. It provides that on the last day of the initial term the lessees shall surrender unto the lessor '' all and singular the said demised premises with the buildings and improvements thereon ''. There is a further clause that, just prior to the expiration of the term, there shall be an appraisal of lot and of building; and then the lessor covenants that in case he does not elect within thirty days after the receipt of such appraisal to pay the lessees for the building at such appraised value, he will grant to the lessees a renewal of the lease for a further term of twenty years at an annual rent equal to 5% of the appraised value of the lot if such rent is greater than the rent provided for in the initial term. The lease further provides that if the lessor elects to purchase the building after such valuation he will pay for it to the lessees at the end of the term provided the building is in good order and condition. The lease then goes on further to provide that in the event of the renewal of the lease there shall be a similar separate appraisal of the land and building (just prior to the expiration of such renewal). Then the lease includes a second renewal provision, which would be for the period from 1931 to 1951. This clause is as follows: '' And the said party of the first part [the lessor] for himself and his legal representatives further covenants that in case he or they do not elect within thirty days after the receipt of such last mentioned appraisal to pay for the said building at such appraised value he or they will get [give?] Another Renewal of the said Lease for the further term of twenty years at an annual rent equal to five per cent upon the said last mentioned appraised value of the said lot of land to be paid quarterly but in no event at a less rent than stipulated to be paid by the first lease  *   *   * And the parties further agree that the said renewal of this Indenture in case the same be granted shall contain like cove-

nants with this Indenture Except the covenants to pay for the building or grant a renewal for a further term of twenty years but shall contain a covenant on the part of the said parties of the second part or their legal representatives to surrender and yield up the premises to the said party of the first part or his legal representatives at the expiration of the term hereby granted with the building thereon in as good order and condition as they then are ordinary wear and tear and damages by the elements excepted ''.

It seems clear therefore that the tenants were to surrender the land *and building* at the expiration of the term. The 1891 lease contained no reservation to the lessees of title to the building. Their only right was to have the landlord pay for the building at a price to be determined by an agreed formula or to grant a renewal lease for twenty years, and thereafter another renewal lease for a further twenty years. And, if a renewal lease for a second renewal term were granted, such lease was to contain the same covenants as the 1891 lease except as to further renewals — and in lieu of the deleted clause there would be a covenant that the tenant would surrender the land and building to the landlord at the end of the third term.

The 1911 leases (through which the defendants Ritzmann, 108 Eighth Avenue Corporation, and Mirabito Meat Co., Inc., claim) and the lease of March 23, 1931, for one and one-half months (through which the defendant Wachsman & Co., Inc., claims) and the renewal lease of 1911 (through which the defendants Schaefer claim) are all drawn on identical printed forms and are substantially uniform. Each lease contains a covenant precisely like that of the 1891 lease, to the effect that the tenant would quit at the end of his term, and surrender to the owner '' all and singular the said demised premises *with the buildings and improvements thereon.*'' (Italics supplied.) Each 1911 lease further provided — in language similar to the 1891 covenants — that, at the end of its term, to wit, April 30, 1931, the owner would either pay the tenant for the building or grant a twenty-year renewal, except that the clause in the 1911 agreement providing for the renewal omitted any provision with regard to such payment or further renewal; and a new covenant was substituted for inclusion in the proposed renewal lease to the effect that the tenant would surrender the premises, including the building.

The 1911 leases and the short-term 1931 lease were renewed by the execution of new leases dated March 30, 1931. These 1931 renewal leases contain provisions identical with the similar 1911

leases and short-term March, 1931, lease, with the exception that the covenant to pay for the building or grant a renewal was omitted and a new provision inserted as follows: " And the said party of the second part, for herself, her heirs, executors, administrators and assigns does covenant and agree with the parties of the first part, their successors and assigns, *to surrender and yield up the premises to the said parties of the first part, or their legal representatives, at the expiration of the term hereby granted, with the building thereon* in as good order and condition as they now are, ordinary wear and tear and damages by the elements excepted." (Italics supplied.) (It may be noted in passing that the 1931 lease provides for payment of a flat sum for the building instead of the appraised value.)

The 1931 renewal leases contain no reservations of title to the buildings. Such omission brings the parties within the operation of the general rule that buildings are a part of the land. These three leases were separate contracts, creating three distinct terms, and when the last lessee accepted a lease which contained no title reservation as to the building, he lost any right of ownership therein that he or his predecessors in title may have had under the first and second leases. (*Precht* v. *Howard,* 187 N. Y. 136; *Loughran* v. *Ross,* 45 N. Y. 792; *Talbot* v. *Cruger,* 151 N. Y. 117.)

A lease of land carries with it the building erected on the land (*Hay* v. *Cumberland,* 25 Barb. 594; *Loughran* v. *Ross, supra*). The general maxim of the law is that whatever is fixed to the realty becomes a part of it, and partakes of all its incidents and properties. This is the rule, even in the relationship of landlord and tenant (*Ombony* v. *Jones,* 19 N. Y. 234; *Bernheimer* v. *Adams,* 70 App. Div. 114, affd. 175 N. Y. 472). The leases referred to above clearly establish plaintiffs' title to the buildings. The defendants have failed completely to prove any superior title.

The fact that in 1945 the managing agent of the property sent the defendants communications and bills for rent marked " Land only " does not justify the conclusion that the defendants owned the buildings. The clear unambiguous language of these leases is not susceptible to such casual and incidental practical contractual construction, even assuming the agent's authority thus to bind the owners — which has by no means been proved in the record before me.

As to the second proposition involved in the case, the legal principle seems to be well established that a lessee of entire

premises, who sublets all of the rental space to undertenants and is himself merely in constructive possession, is not entitled, as against his landlord, to the protection of the emergency rent laws (*WMCA, Inc., v. Blockfront Realty Corp.*, 194 Misc. 932, affd. 272 App. Div. 800, motion for leave to appeal denied 297 N. Y. 1042; *Hutchins v. Phillips*, 277 App. Div. 1055; *Westcott v. Urban Holding Co.*, 277 App. Div. 999. Cf. *Axelrod v. 11 West 42nd St., Inc.*, 274 App. Div. 651, affd. 299 N. Y. 765, and *Gasoff Realty Corp. v. Serval Food Exch.*, 71 N. Y. S. 2d 58, affd. 273 App. Div. 999).

In order to overcome the effect of these authorities, clearly adamant against them, the defendants (admitting that they are not in actual personal physical possession) contend that the buildings do not occupy all of the land on each parcel, and that there are approximately twelve feet of rear space not built upon, of which they claim to be in constructive legal possession. That fact is not appropriate cause for a contrary decision. The emergency rent control laws are inapplicable to cases which fall outside the purpose and intent of the statute (*White-Way Arcade v. Broadway Turtle King*, 273 App. Div. 281). Whether a tenancy is entitled to the protection of the emergency rent control laws depends on whether such tenancy comes within the definitive provisions of the laws. The statute is designed primarily to prohibit the exaction of oppressive and unreasonable agreements for the payment of rent. The factual situation that concerns us here contains none of the emergency conditions which gave rise to the rent legislation. The statute was not intended to protect entrepreneurs — even though they are lessees *vis-à-vis* the fee owners — who, themselves acting as landlords, sublet to actual occupiers of the premises all or practically all of the space demised to them as principal lessees. This is so notwithstanding that they may in fact occupy a small portion of the building or may control those portions used in common by the tenants generally (*Belenky v. Colombo*, 275 App. Div. 99; *277 Park Ave. Corp. v. New York Central R. R. Co.*, 194 Misc. 417, affd. 275 App. Div. 1028).

A fortiori, where the reserved space is vacant land, as in the case at bar, there is no overriding legislative intent to impose emergency interference upon contractual and property rights. Vacant unused land is not occupied space. The statute was enacted to protect the actual occupiers of rented space, not absentee constructive dominion. It is the respective subtenants of portions of the premises, and not the main tenant of the

entire premises who is himself the landlord of such subtenants, who are protected in their possession by the provisions of the emergency rent control laws.

In April, 1945, shortly after the enactment of the emergency rent laws, the managing agent of the property wrote letters to the then lessees-in-chief, informing them as to the respective amounts of the lease rent and the amounts of the emergency rent, and stating that the lessees are required to pay only the lower amounts "under the new law," and that the agent "will accept it without prejudice to our rights." Even assuming authority to bind the owner — which is not proved — and ignoring the "without prejudice" reservation — which the defendants seem to have done — and forgetting the early unfamiliarity with the laws' provisions which gave rise to the communication, I hold that there cannot be spelled out from this circumstance that the emergency statute is applicable. Not only is there no agreement, but no waiver and no estoppel. And, moreover, it is the Legislature whose function it is to determine whether the law is to affect existing rental relationships — not the unilateral acts of the landlord or the tenant.

Plaintiffs herein succeeded, by virtue of the deed to them dated February 2, 1951, to all the rights of the lessors named in the 1931 renewal leases (Real Property Law, § 223). Accordingly, as owners of the fee and as successors in interest to the defendants' former landlords, the plaintiffs are entitled to possession as against the defendants, and to collect the rents payable by the subtenants, and to collect the same directly from the subtenants.

Judgment is granted to the plaintiffs for the relief demanded in the complaint in the Supreme Court action. Judgment is also granted for the amounts set forth in the plaintiffs' bills of particulars in the five Municipal Court actions which were instituted to recover unpaid rents under the leases up to the date of their expiration, April 30, 1951, and which actions were, by order of this court, consolidated with the Supreme Court action. This opinion constitutes my decision. Settle judgment on notice. Thirty days' stay as to the Municipal Court claims. Sixty days to make a case. The exhibits and other papers may be obtained by counsel from the clerk of the court.