Maurice Wahl, J.
This holdover proceeding, begun in March, 1961, is based on the contention by the petitioners that the store premises at 592 Eighth Avenue, Borough of Manhattan, are not protected by the provisions of the Emergency Commercial and Business Space Rent Control Laws; ‘1 for the reason that the tenant’s assignor, Morton M. Goldberg, and the tenant assignee were not in possession of the space herein demised at the time that the tenant’s assignor, Morton M. Goldberg, executed the said lease herein on or about February 18,1959, within the purview of the provisions of ” section 13 of the Emergency Commercial Space Rent Control Law (L. 1945, ch. 3, as amd.) and section 12 of the Emergency Business Space Rent Control Law (L. 1945, ch. 314, as amd.). Paragraph “Sixth” of the petition.)
For many years, one Samuel Goldberg had occupied store premises for the sale of textiles. The said occupant, admittedly a statutory tenant, died in June, 1958. The deceased’s son, Morton M. Goldberg, an attorney, was the executor of the estate and in such capacity took possession of the store and continued the business until March, 1959. While in possession as the personal representative, he obtained from the landlord a lease dated February 18,1959 for himself individually for a two-year term, and said lease was to begin March 1, 1959. Of course, there was an increased rental. In the lease, the son was described as “heir and successor of Samuel Goldberg”. In April, 1959, Morton M. Goldberg assigned his lease to the present tenant. Upon the expiration thereof on February 28, 1961, landlord *1071 elected to consider the occupant as a holdover and instituted these proceedings.
The tenant, the assignee of Morton M. Goldberg, now contends that it is covered by the statute, since the space is protected, and whoever the tenant may be, and however he came into possession, is totally irrelevant.
Basically, the purpose of the emergency rent laws was to protect tenants in possession by placing a ceiling on rents and by preventing widespread evictions while the emergency created by wartime shortage of space continued. (Morse & Grossman v. Acker & Co., 297 N. Y. 304, 310.) Fundamentally, its object was to prevent eviction, on certain conditions, of those who were tenants renting commercial or business space. (Rosen v. 370 West 35th St. Corp., 184 Misc. 172, 174.)
The emergency rent laws were not intended to protect entrepreneurs or persons not in possession during the emergency (Jaylo Realty Corp. v. Bobnor Realty Corp., 275 App. Div. 646, 647; Benenson v. Ritzmann, 203 Misc. 768; 800 Union St. Corp. v. Bookben Realty Corp., 97 N. Y. S. 2d 723).
There is no reversion or term to a statutory tenancy. (Consolidated Serv. Stations v. Cities Serv. Oil Co., 200 Misc. 605, 608.) Samuel Goldberg was in possession of the store premises, not under any agreement but by virtue of the compulsion which the law exerted on the landlord (Stern v. Equitable Trust Co., 238 N. Y. 267, 269), and when the statutory tenant died, the statutory tenancy died with him. (Stern v. Equitable Trust Co., supra, p. 270.) There was no term left which the son, as the legal representative of his father’s estate, could transfer or assign to himself or to anyone else.
The lease which Morton M. Goldberg obtained for himself on February 18, 1959, created an entirely new leasehold which had nothing to do with his father or his estate or the legal representative thereof, and he, the son, was a stranger who had not been, prior to March 1, 1959, in occupancy or possession of the store premises. The phrase ‘6 heir and successor to Samuel Goldberg ” which he appended to his name in the lease was ineffective to make him a statutory tenant.
The lease executed by the son was not in a fiduciary capacity representing the decedent’s estate. The descriptive language concerning the son in the lease denotes a devolvement of the interest in another person rather than the original tenant and its fiduciary. (2300 Concourse Realty Corp. v. Klug, 201 Misc. 179; Ocean Fifth Realty Corp. v. Stern, 202 Misc. 336.)
"When the lease, dated February 18,1959, was made, the store premises became decontrolled, pursuant to the provisions of *1072 section. 12 of the Emergency Business Space Bent Control Law (L. 1945, ch. 314, as amd. by L. 1951, ch. 430, L. 1952, ch. 417) which, so far as pertinent, reads: ‘ ‘ The provisions of this act shall be inapplicable with respect to any business space now vacant or hereafter vacated by a tenant, or to space demised under a lease or sublease executed subsequent to March thirty-first, nineteen hundred fifty to a person not in possession at the time of the execution thereof ” (emphasis supplied).
The tenant cites Lincoln Bldg. Associates v. Henry (10 Misc 2d 507) as authority for its position. This case is clearly distinguishable. There, the tenant occupied one room in a building as a statutory tenant. The landlord requested him to move to another room in the same building at the landlord’s expense, and the latter, by a writing, agreed that the tenant would retain his statutory rights in the new room. The landlord was held to his agreement by this court.
Hence, the statutory tenancy of Samuel Goldberg ended upon his death, and his son, as an individual and not in his representative capacity, appropriated the premises for his own use and personal profit. (Bowman Realty Corp. v. Trice, 205 Misc. 588, 589-590.)
The assignee, the present tenant herein, stands in no better position than his assignor. Final order in favor of the landlord.