David H. Edwards, Jr., J.
This is a holdover summary proceeding. The petitioner is the owner and landlord of the premises 520 East 81st Street, in the Borough of Manhattan, City of New York. The respondent Lenox Hill Hospital, is a volunteer nonprofit hospital. During the period from 1968 into 1970 it became the lessee of 14 apartments, by written rental agreements, in the multiple dwelling owned by the petitioner. The remaining respondents are subtenants to whom Lenox Hill Hospital sublet the 14 apartments. All of Lenox Hill’s leases have expired and since the date of expiration it has remained in the various apartments on a month to month basis. All of Lenox Hill’s subtenants are upon the premises on a month to month basis either by expiration of the written subleases or as monthly tenants pursuant to written subleases. The building, a multiple dwelling completed after February 1, 1947, on its face appears to be subject to the New York City Bent Stabilization Law under title YY of chapter 51 of the Administrative Code of the City of New York.
The petitioner has served 30-day notices terminating the tenancies upon the Lenox Hill and upon the occupants and subtenants of the 14 apartments, effective as of February 28, 1973, pleading two grounds as a basis therefor; first, that the premises are not subject to the Rent .Stabilization Law of 1969, under the Vacancy Decontrol Act (L. 1971, ch. 371, § 6) having become vacant after June 30, 1971, and secondly, that the premises are not subject to the Rent Stabilization Law under the Primary Residence Act (L. 1971, ch. 373, § 2), as the housing accommodations are not occupied by the tenant, Lenox Hill, as its primary residence. During the course of the trial the court entertained *440 a third ground as a basis for the petitioner’s claim to possession, namely, that the respondent, Lenox Hill Hospital, not being an actual occupant of any portion of the premises, and having sublet all portions of all the apartments in question, it is not covered by the emergency rent statutes as it was not the intention of the Legislature to grant nonoccupying tenants such as this respondent the protection of the emergency rent laws.
The denials and affirmative defenses interposed by the respondents essentially dispute that the premises ever became vacant; assert that the Primary Residence Law is not applicable because of failure of the landlord to secure an order of decontrol from the City Housing Rent Agency as required by the statute, and finally that the Rent Stabilization Law by the terms of its enactment has not excluded nonoccupancy tenants from the protection of the emergency rent laws.
The evidence adduced during trial disclosed that in 1959 Lenox Hill Hospital commenced a program for furnishing housing accommodations for its nurses as both an inducement in its efforts to recruit nurses and as a convenience to the nurses. In furtherance of this program it eventually rented apartments in New York City in various buildings which were fairly close to the site of the hospital, capable of accommodating approximately 300 nurses of the hospital staff. Fourteen of these apartments are the premises in question in this proceeding. By written leases and with the consent of the landlord, Lenox Hill Hosptal sublet these apartments exclusively to members of its nursing staff. It provided the basic furniture for each of the apartments, approximating in cost for these apartments about $15,000; however, it did not occupy any portion of any of the premises for the conduct of its own affairs. The rent charged to the nurses was always less than that charged to Lenox Hill by the owner. The difference was written off by Lenox Hill as an expense. No rent was ever paid by the nurses to the owner. Instead, each month, with its own funds, Lenox Hill paid the rent reserved in its leases to the owner and collected from its employees the rent charged respectively to the nurses. If there ever was a time when an apartment was not occupied by a nurse, Lenox Hill nonetheless paid the full rent to its landlord, the petitioner. The nurses paid their own electric and telephone bills which they secured in their own names. Lenox Hill’s name did not appear in any of the nameplates for the apartments, but rather the names of the nurses and their families were placed on the doors and bells. Eight of the apartments, apartments 4-0, 14-D, 11-F, 6-Gr, 11-Gr, 12-H, 11-K *441 and 10-L became vacant and were sublet subsequent to June 30, 1971, the effective date for decontrol because of vacancy under the Vacancy Decontrol Act.
During the course of the trial I dismissed the claim of the petitioner that it is entitled to posession of the premises because the accommodations are not being used as the primary residence of the respondent, Lenox Hill Hospital. I adhere to this ruling. The petitioner has not complied with the condition precedent required by the statute in securing an order of decontrol from the City Housing Bent Agency.
With respect to the landlord’s contention that eight of these apartments became destabilized because of vacancies occurring after June 30, 1971, I find against the petitioner. Although, for these apartments, prior nurses may have moved out and new nurses moved in at a period after June 30, 1971, I do not find that thereby the premises became vacant. Although not occupied by a nurse nonetheless on all occasions the furnishings and possessions of Lenox Hill were always present upon the premises and Lenox Hill always paid and the petitioner always accepted the rent reserved in the prime lease. Lenox Hill at least was always constructively in possession of the premises.
With respect to the third ground — is Lenox Hill Hospital entitled to the protection of the emergency rent laws by reason of being a subletting tenant landlord not occupying any portion of the rented premises — I think it is not so entitled. Among the reasons for the enactment of the emergency rent measures by both the City and the State of New York has been and is the acute shortage of dwellings. Lenox Hill has in effect removed a goodly portion of the available residential units in the City of New York from the general market by restricting the rental of these apartments exclusively to nurses employed by Lenox Hill. It is in effect seeking to create a group of dormitories for its professional staff carved out of the pouce housing accommodations available to the residents of this city. I cannot conceive that this was within the intention of the Legislature. The Bent Stabilization Law was also enacted to forestall profiteering. While by no means is Lenox Hill Hospital exacting unjust or unreasonable rents from its nurses and subtenants (quite the opposite — the rents charged by Lenox Hill to its employees are quite reasonable and fair and considerably below the rents the market would bring) nonetheless Lenox Hill does derive something of value to itself in having these housing accommodations available for its nurses, namely the ability to attract and recruit nurses for its staff, some being recruited *442 from as far away as Ireland, partially induced by the assurance of exclusive housing accommodations. As commendable as it may be for Lenox Hill, a volunteer nonprofit hospital, to attempt to secure an adequate staff for its essential and meritorious purposes I do not conceive that the emergency rent laws were enacted for the purpose of assisting any association to further its own business ends. Finally, the Bent Stabilization Law is intended under some circumstances, such as a vacancy after June 30, 1971, to provide some rent relief to-owngrs_of^ dwelling places in their economic plight. Under the contention put forward by the respondent these housing accommodations could remain under rent control in perpetuity, depending upon the wish of the respondent and the continuation of the emergency rent laws. I do not conclude that this was the intent of the Legislature. I find precedent for the holding that emergency rent laws were intended to protect persons in actual residency rather than persons out of residency acting as landlords themselves. (See Hutchins v. Phillips, 277 App. Div. 1055 [2d Dept., 1950]; Benenson v. Ritzmann, 203 Misc. 768 [Sup. Ct., N. Y. County]; Honey Shops v. Rothfeld, 12 Misc 2d 877 [Municipal Ct. of City of N. Y., 1958].) A 30-day notice having been served terminating the tenancy with respect to the respondent Lenox Hill Hospital, judgment is granted awarding possession to the petitioner as against the respondent Lenox Hill Hospital.
By concession, possession of one apartment, apartment 2-C, has since been returned to the petitioner since the commencement of this action and is no longer in issue. With respect to the remaining 13 respondents and subtenants who are parties to this proceeding, I am not prepared to hold that they are not entitled to the protection of the Bent Stabilization Law and other pertinent emergency rent laws. They are the actual tenants and occupants in residence who entered upon the premises with the knowledge and consent of the petitioner. I have no doubt that the intent and spirit of the Bent Stabilization Law was to protect bona fide residents such as these respondents. Upon the ouster of the prime tenant the subtenants become the tenants of the petitioner and are entitled to remain in possession (see Knickman v. Hachfeld-Petri, 88 N. Y. S. 2d 346). A judgment of possession against the subtenants respondents named herein is denied. I have held herein that none of the apartments have ever become vacant, as distinguished from occupied, ¡subsequent to the pivotal date of June 30, 1971, there being a continuous tenancy by Lenox Hill. Consequently, all apartments must remain stabilized and the collectible rent is the rent *443 reserved in the agreements made with Lenox Hill Hospital until such time as other applicable rents are established under the Rent Stabilization Law.
Pursuant to the stipulation of the parties and the consent of the court the issues of the charges for use and occupancy and counsel fees have been reserved until after disposition of the issues determined herein. Accordingly, these remaining issues are set down for trial for July 10, 1973, in Landlord and Tenant Part 49 of this court for determination. Petitioner shall promptly serve a copy of this order upon the Calendar Clerk of Part 49 so that the matter may be set down for that date and it shall also serve a copy upon the attorneys for the respondent. Issuance of a warrant of eviction is stayed to July 10, 1973, without prejudice to an application for a further stay to the Judge presiding at the determination of the remaining issues should he deem fit.