OPINION OF THE COURT
David B. Saxe, J.
The issue that I must resolve in the context of this holdover proceeding tried without a jury is as follows: When a prime tenant rents a large number of apartments (i.e., 10) in a multiple dwelling, and then sublets an apartment to the respondent for living purposes in violation of the terms of the lease between the prime tenant and the landlord (because the subtenants were not employees of the prime tenant), are the respondents, at the expiration of the sublease, entitled to a renewal lease from the landlord in accordance with guidelines established by the Rent Stabilization Law?
The issue is one of apparent first impression, and calls for an analysis of the holding in 520 East 81st St. Assoc. v Lenox Hill Hosp. (74 Misc 2d 438, mod 76 Misc 2d 892, affd 47 AD2d 513, affd 38 NY2d 525), based upon the new factual setting present here.
The essential facts are these: The disputed apartment building is located at Second Avenue and 14th Street in Manhattan. In February, 1979, the prior owner of the premises, F.K.B.A. leased 10 units to Total Impact, Inc., a *235 motion picture production company for film making activities and residence quarters for various associates of Total Impact, Inc. in connection with the production of motion pictures. The lease term was from April 1, 1978 through March 31, 1983.
On February 15, 1979, Total Impact leased one of its apartments to the respondents for a term starting March 1, 1979 and ending March 1,1981. In May, 1979, the present owner, 214 Associates, purchased the building from F.K.B.A. On or about May 1, 1981, 214 Associates and Total Impact, Inc. entered into an agreement which, inter alia, provided for the surrender to the landlord of the respondent’s apartment.
The respondent subtenants nevertheless refused to vacate the premises contending that they are residential tenants of the petitioner entitled to the full panoply of rights under the Rent Stabilization Law and Code. The petitioner, on the other hand, argues that the respondents were aware that their occupancy was in contravention of the prime lease in that they were not employees of Total Impact, Inc. and consequently that they were illegally occupying the premises. The respondents deny any knowledge on this point. They claim that as far as they knew, they were dealing directly with the landlord and were not subtenants.
By virtue of the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4), the building in question, containing more than six dwelling units apparently constitutes a multiple dwelling and is covered by the Rent Stabilization Law notwithstanding the decontrol of the premises in 1973.
Although the building is subject to the Rent Stabilization Law, the issue to be resolved here is whether these specific respondents qualify for the protections derived from this statutory scheme. The respondents contend that they are, and cite the leáding case of 520 East 81st St. Assoc. v Lenox Hill Hosp. (supra), as controlling authority.
In the Lenox Hill case, the hospital rented 14 apartments in the landlord’s apartment building and sublet these apartments to its nurses. The landlord had knowledge of *236 the subleases. The Lenox Hill lease expired and Lenox Hill and the nurses remained in the apartments as month-to-month tenants. The trial court held that the nurse subtenants were, in fact, protected by the Rent Stabilization Law.
“With respect to the remaining 13 respondents and subtenants who are parties to this proceeding, I am not prepared to hold that they are not entitled to the protection of the Rent Stabilization Law and other pertinent emergency rent laws. They are the actual tenants and occupants in residence who entered upon the premises with the knowledge and consent of the petitioner. I have no doubt that the intent and spirit of the Rent Stabilization Law was to protect bona fide residents such as these respondents. Upon the ouster of the prime tenant the subtenants become the tenants of the petitioner and are entitled to remain in possession.’" (520 East 81st St. Assoc. v Lenox Hill Hosp., 74 Misc 2d 438, 442.) The petitioner contends that the facts in this case are distinguishable from those set forth in Lenox Hill because the prime tenant here violated its lease by renting to the respondents who were not employees. The respondents contend that this case is not distinguishable from Lenox Hill and that the petitioner’s theory, if accepted, would produce nonsensical results because according to petitioner’s reasoning, a Total Impact employee subtenant would receive statutory protection, but a non-employee would not.
I find that this case is distinguishable from the Lenox Hill case but based upon another theory. Here, unlike Lenox Hill, the petitioner lacked knowledge that these premises were being wrongfully rented by Total Impact to outsiders in substantial violation of its lease with the petitioner. Nor have I found that the petitioner’s predecessor in title, F.K.B.A., was aware of this. In Lenox Hill there was no similar breach.
It is further contended by the respondents that regardless of the landlord’s lack of knowledge as to the wrongful subletting undertaken by Total Impact, the landlord is equitably estopped from relying on this breach in .this termination proceeding. Simply put, it is alleged that F.K.B.A., the petitioner’s predecessor in title, put Total Impact into a position in which it could mislead the respon *237 dents and others into reasonably believing that Total Impact was “in charge” as the landlord of the premises and had the authority to rent the apartment to them without restriction.
Equitable estoppel is a principle, “by which a party is precluded * * * from denying, or asserting the contrary of, any material fact which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another, who was excusably ignorant of the true facts and who had a right to rely upon such words or conduct, to believe and act upon them thereby * * * changing his position” (21 NY Jur, Estoppel, § 15).
Even though Total Impact never had actual authority to lease any of the units to nonemployees, the petitioner and its predecessor in interest, by their course of conduct, clothed Total Impact with the ability to rent apartments to unknowing third persons for residential purposes without restriction. As such, Total Impact was placed in a position by its landlord in which the respondents were reasonably led to believe that it (Total Impact) was the landlord of the premises. This view is strengthened by the fact that Total Impact was the superintendent of the subject building until June, 1979.
I further find that the subtenants were entitled to believe and did in fact believe that Total Impact was the landlord and authorized to lease their apartments to them. A standard form lease was used in which the parties were referred to as lessor and lessee. Although the form did refer to the agreement as a sublease, the term “master tenant” appeared once in parenthesis following the name “Total Impact”. The respondents contend that they never understood this to mean that Total Impact was merely a lessee of the premises. Since the term “master tenant” is a technical term and the respondents were not represented by counsel, it would be inequitable to bind them to the legal significance of that term. I therefore find that the term as used here did not call to their attention the fact that they were dealing with any entity other than the landlord. I hold that the respondents’ belief that they were dealing with an ultimate landlord was reasonable under the circum *238 stances. I hold that the defense of equitable estoppel has been established.
Therefore, I find that the respondents were, in effect, renting a residential unit directly from the landlord without the restrictions that bound Total Impact, Inc. So, when their lease expired, they were entitled to a renewal lease in conformity with the guidelines of the Rent Stabilization Code. The petitioner did not offer such an option to the respondents. The petition is therefore dismissed. A hearing on counsel fees shall be held in Part 52.